## LEMON VS. GROSSKOPF.

*Liability of agent for moneys collected on sale of lottery tickets.*

1  Plaintiff, as the owner of a lottery scheme, employed defendant as 'his· agent in this state to sell tickets, and receive and retain the proceeds until satisfied that the drawing was fairly conducted, and then account therefor. The sale of lottery tickets being unlawful in this state, *Held*, that plaintiff could not recover on a note of defendant for the amount of the proceeds of tickets sold by him.

2. But where another agent employed by plaintiff, had paid over to defendant the proceeds of tickets sold by him, with directions to pay them to plaintiff if the drawing were fairly carried on, defendant was liable for that amount, in the absence of any evidence of fraud in the drawing.

APPEAL from the County Court of *Milwaukee* County.

In the winter of 1865–66, the firm of Briggs, Lemon & Co., of which plaintiff was a member, were the originators and owners of a lottery scheme in the city of Chicago, Illinois, known and described as a gift concert, the tickets of. which were sold at one dollar each. During that winter, they placed in defendant's hands a number of the tickets to be sold by him as their agent; and there was an understanding between them that he·should retain the money received for such tickets until satisfied that the drawing of the prizes in said scheme was to be fairly conducted. During the same winter, said firm left with one Kilgore, in the city of Milwaukee, a number of said tickets to be sold by him as their agent, the money received by him to be paid over to them before the drawing of the prizes. De-

fendant, as agent of said firm, sold 258 tickets and received $258 therefor; and he himself retained nineteen of the tickets as a purchaser. Before the drawing of the prizes (which took place March 28, 1866), plaintiff became sole owner of said gift concert scheme. Before said drawing, Kilgore was directed by defendant to deliver to him all moneys which he (Kilgore) had received as agent for the sale of said tickets, to be transmitted to plaintiff; and accordingly he did deliver to defendant $255 received by him for tickets; $95 of which were so delivered without any conditions or instructions, other than a statement that it was money for the plaintiff, derived from the sale of tickets in said scheme in this state; but when the balance of the $255 was delivered to defendant, Kilgore directed him to retain the same until satisfied that "the show was all right," though Kilgore had no authority from plaintiff to attach any conditions to the transmission of said money by defendant. Defendant went to Chicago about the time the drawing was to take place; and, before the drawing, becoming satisfied that it was to take place fairly, according to the advertisement, he accounted with plaintiff for all the money he had received for tickets sold by himself, and for the nineteen tickets which he retained as sold to himself, and for said sum of $255 received from Kilgore, and gave plaintiff his check on a bank in Milwaukee for the whole amount, which was intended as a payment; but said check was not paid. Afterwards defendant gave plaintiff his note at thirty days for the amount of said check, with interest, and took up the check. The present action is upon the note.

The county court held that plaintiff could not recover; and from a judgment against him, plaintiff appealed.

*Paine & Co.*, for appellant, cited *Brooks v. Martin*, 2 Wallace, 70; *Tenant v. Elliott*, 1 Bos. & Pul., 3; *Farmer v. Rus-*

*sell*, id., 296; *Thomson v. Thomson*, 7 Ves., 471; *Sharp v. Taylor*, 2 Phillips Ch., 801; *Nodine v. Doherty*, Am. Law Reg., Apr., 1866, 346; *Merritt v. Millard*, 5 Bosw., 645; *Owen v. Davis*, 1 Bailey, 316.

*Stark & McMullen*, for respondent, contended that plaintiff had been guilty of a crime under the laws of this state and of Illinois, and courts would not aid him to reap the fruits of it. R. S. Wis., ch. 169, secs. 1, 2, 6; 2 Statutes of Ill., p. 756; *Langton v. Hughes*, 1 Maule & Sel., 593; *Fales v. Mayberry*, 2 Gall., 560.  2. Proceeds of the sales of lottery tickets are, in contemplation of law, money had and received to the use of the respective purchasers, who may recover the price paid either from the manager or *his agent*. *Browning v. Morris*, Cowper, 790; *Jaques v. Golightly*, 2 Blacks., 1073; *Jaques v. Withy*, 1 H. Blacks., 65; *White v. Bartlett*, 9 Bing., 378; *Wardell v. Waite*, 7 Johns., 434; *Tracy v. Talmage*, 14 N. Y., 162; Smith on Con., 286 [*204]; 2 Smith's L. C., 394 [*298]; Story on Con., § 491.  Such is also the just and proper construction of secs. 6, 7, 8, 16, 17, 18, ch. 169, R. S.  A purchaser of lottery tickets is not held to be *in pari delicto*, with the seller.  *Ruckman v. Pitcher*, 1 Coms., 396.  3. The law will not in any manner assist an illegal transaction, or give it, or anything connected with it, any countenace or validity.  *Roby v. West*, 4 N. H., 285; *Brown v. Tarkington*, 3 Wallace, 377; *Wheeler v. Sage*, 1 id., 518; *Cousins v. Smith*, 13 Vesey, 542; *Broom's Leg. Max.*, *349; 1 Selw. N. P., 56; *Miller v. Larsen*, 19 Wis., 463.  If the plaintiff needs the aid of his illegal transaction in any respect to support his case, he cannot be heard. *Simpson v. Bloss*, 7 Taunt., 246.  If a new contract is collateral to, or tainted with the illegality of, or dependent upon, the original unlawful transaction, it cannot be enforced.  *Maybin v. Coulon*, 4 Dall., *298; *Fales v. Mayberry*, 2 Gall., 560; Dunlap's Paley, 64; Story on Con., § 624;

*Armstrong v. Toler*, 11 Wheat., 258; Story on Agency, §
195.  4. As to the money paid defendant by Kilgore, coun-
sel argued, (1) That the whole arrangement by which de-
fendant became depository of that money, was designed and
adapted to " promote " a lottery, in violation of the statute.
When Kilgore made the last payment, he directed defend-
ant to retain the money until satisfied that " the show was
all right." Defendant acted under this condition, made a
special journey to Chicago to attend " the show," and pro-
nouncing himself satisfied, accounted to plaintiff. These
were *illegal acts*, because directly promoting the lottery, and
they taint the Kilgore money in defendant's hands with
illegality. If plaintiff gave Kilgore no authority to annex
this condition, he at least acquiesced in it, demanding no
accounting until defendant obeyed the condition. More-
over plaintiff could give no direction respecting the money
that a court would enforce. Kilgore, being in possession,
had at least the better claim, in behalf of purchasers, to
direct the disposition of the money. In illegal transactions
money may always be stopped while *in transitu* to the per-
son who is to receive it; it is never treated as paid. *Edgar
v. Fowler*, 3 East, 118, [*222.] And to show fulfillment of
the condition annexed, plaintiff must call in the aid of his
illegal lottery. Story on Agency, § 300; Dunlap's Paley,
388–93, and cases there cited; *Edwards v. Hodding*, 5 Taunt.,
815; *Blakely v. Ins. Co.*, 20 Wis., 205; *Waymell v. Reed*, 5
Term., *599; *Fales v. Mayberry*, 2 Gall., 560; *Back v. Albee*,
26 Vt., 184; *Wooten v. Miller*, 7 S. & M., 380; *Bartle v. Cole-
man*, 4 Pet., 184; *Belding v. Pitkin*, 2 Caines, 147; *Josephs
v. Prebrer*, 3 Barn. & Cress., 629; *Lightfoot v. Tennant*, 1
Bos. & Pul., 552; *Holland v. Hall*, 1 Barn. & Ald., 53; *Ter-
rit v. Bartlett*, 21 Vt., 184; *Nellis v. Clark*, 20 Wend., 24;
*Bliss v. Brainard*, 41 N., 256; *Bell v. Quinn*, 2 Sandf., 146.
5. This money may likewise be viewed as a *stake* deposited

in defendant's hands to abide a certain contingency. By the statute, Kilgore, or at least purchasers of tickets, could recover the moneys in defendant's hands; but plaintiff having deposited no money, can recover none. *Shumate's Case,* 15 Gratt., 653. Counsel further argued at length, that the cases relied on by appellant were all clearly distinguishable from this.

COLE, J. The counsel on both sides substantially concede that the rule is well settled, that courts will not enforce illegal contracts; but they differ as to the application of that rule to the facts of this case. So far as the nineteen tickets, which the defendant retained for himself, are concerned, it is admitted by the plaintiff's counsel that no recovery can be had. Then the question arises, Was the plaintiff entitled to recover the money received by the defendant for tickets sold by himself? It is insisted that he can recover that money because the illegal contract has been fully executed; the purchasers of the tickets having paid over the same to the defendant for the use of the plaintiff. It is said that when money is paid by one person, on an illegal contract, to the agent of the party entitled to receive it, such agent cannot set up the illegality as an answer to the claim of the principal; that, as between the agent and the principal, the action is not founded on the illegal contract, nor does the obligation of the agent to pay over the money grow out of such contract, but arises from the fact that the agent has received money for the principal. This may be true in some cases, and seems to be the ground upon which *Tenant v. Elliott,* 2 B. & P., 4; *Farmer v. Russell,* id., 296; *Sharp v. Taylor,* 2 Phillipps (22 Eng. Ch. R.), 801; *Owen v. Davis,* 1 Bailey, 315, and some other cases to which we were referred on the argument, are decided. It seems to us, however, that the doc-

trine of these cases is not entirely applicable to the case before us. The difference may not be very discernable, but still we are disposed to give it weight in our decision. Here the defendant was employed by the plaintiff to sell these lottery tickets, receive and retain the money for them until he became satisfied that the drawing of the prizes in the scheme was fairly conducted, and then account to the plaintiff. It was as well a part of his agency to receive and account for the money, as to sell the tickets. And an action to recover this money goes in affirmance of the illegal contract, and to enforce the performance of this duty. The main object of the agency was to do an act criminal by our statute (section 2, chap. 169, R. S.)—to engage " in a traffic not merely forbidden, but fraudulent and indictable." And if the agent is dishonest in the transaction of the business—if he refuses to account for money which he has secured for the tickets sold by him—should the court interfere and enforce a performance of his duty? It seems to us that the court must decline to interfere on either side, upon the maxim, *ex turpi causa non oritur actio*. In *Hunt v. Knickerbocker*, 5 Johns., 326, which was an action on a contract made for the sale of tickets in a lottery not authorized by the legislature of New York, Mr. Justice THOMPSON, in delivering the opinion of the court, said: "No case could be found where an action has been sustained, which goes in affirmance of an illegal contract, and where the object of it is to enforce the performance of an engagement prohibited by law. Wherever an action has been sustained against a party, to prevent him from retaining the benefit derived from an unlawful act, the action proceeds in disaffirmance of the contract; and, instead of endeavoring to enforce it, presumes it void." See *Thalimer v. Brinkerhoff*, 20 Johns., 386–397; *Armstrong v. Toler*, 11 Wheaton, 258. It seems to us that the obligation of the defendant

to pay over the money which he has received for the tickets sold by him, is so connected with the illegal contract as to be inseparable from it, and that a court should not lend its aid to enforce it. *Murdock v Kilbourn*, 6 Wis., 468.

But the money which the defendant received from Kilgore stands upon different grounds. So far as that money was concerned, it seems to us that it stands precisely on the same ground it would, had Kilgore delivered the money to some stranger, or to an express company, to transmit it to the plaintiff. It is disconnected with the illegal transaction, and is not affected by it. It is the case suggested by the Master of the Rolls in *Thomson v. Thomson*, 7 Ves., Jr., 468–471, of money paid into the hands of a third person for the use of the plaintiff, who may recover the same from such third person, although the money is the proceeds of some illegal transaction. *Merritt v. Millard*, 5 Bosworth, 645. Therefore, so far as respects the two hundred and fifty-five dollars paid the defendant by Kilgore for the plaintiff, the action is maintainable.

The judgment of the county court must be reversed, and the cause remanded with directions to enter judgment for the plaintiff for that amount.

*By the Court.*—Ordered accordingly.

Mr. Justice PAINE, having been of counsel for the plaintiff, did not sit in this case.