## HARDY vs. STONEBRAKER. .

### *Contract — Fraud.*

1. Where a contract is valid in its inception, subsequent fraudulent conduct towards a third person, by one of the contracting parties, in executing his part of the agreement (the other party knowing of such conduct, and sharing in its benefits), does not avoid the contract, especially where such third party seeks no relief.

2. An agreement between A. and B., that if B. will procure a purchaser of certain land belonging to A., at the price of $8,000, A. will pay B. $3,000 thereof, was not illegal or void; and after such purchase by C., and payment of the money to A., the latter cannot be heard to deny his liability to B. for the $3,000 (C. not seeking any relief against the transaction), on the ground that B. effected the sale by fraudulently concealing from C. the fact that he was acting as A.'s agent in the negotiation, and fraudulently advising C. as a friend that the property was well worth $8,000, and could not be obtained for less, while in fact A. was willing to part with it for $5,000.

APPEAL from the Circuit Court for *Iowa* County.

The plaintiff appealed from a judgment rendered in favor of the defendant, in pursuance of the verdict of a jury. The fol-

lowing statement of the case was originally prepared by Mr. Justice COLE as a part of his opinion herein.

"This action is brought to recover the sum of $1,416, alleged to have been received by the defendant for the use of the plaintiff, or which the defendant owed the plaintiff. The material facts out of which the cause of action arose, or at least so many of them as it is necessary to state in order to understand our remarks upon the instruction given to the jury by the court, and to which exception was taken by the plaintiff, may be briefly stated as follows:

"The defendant was the owner of eighty acres of land in La Fayette county, which was supposed to be especially valuable for the lead mineral which it was thought to contain. In October, 1866, the defendant entered into a written contract with the plaintiff, and his father Joseph A. Hardy, and Dr. G. W. Lee, to lease and sell them the mineral right in this land, and the right to mine upon it, for the sum of $2,000; $500 of which was paid down to the defendant; $500 to be paid in one year, and $1,000 in two years from the date of the contract, without interest. The second party to the contract failed to make the second payment, and the contract was abandoned, except that there was an understanding that if the defendant, or the other party to the contract, could sell the land for a sufficient price, the $500 paid upon the contract was to be refunded. It appears that an arrangement was afterwards entered into between the parties to this suit, by which the plaintiff undertook to find a purchaser for this property at the sum of $8,000, and the defendant agreed, in consideration thereof, to pay him all above $5,000 as a compensation for his services in making the sale at that price, and also in this way to repay the $500 which the plaintiff and his co-lessees had paid on the contract which had been forfeited. In other words, the plaintiff was to have all the purchase money above $5,000. This arrangement was made without reference to any particular purchaser. In May,

1868, the plaintiff induced one Capt. John Grant to purchase this property. He informed Grant that the defendant's price was $8,000, and that the land was of great value for its mineral; and finally succeeded in selling the property at this sum. The evidence is conflicting whether Grant purchased in the first instance the entire property for himself, and afterwards sold a one-fourth to the plaintiff, or whether the plaintiff was interested with Grant in the purchase to the extent of a one-fourth interest from the outset. Previous to the purchase, however, the plaintiff saw the defendant, and told him Grant would buy the property at $8,000, if the terms of payment would suit; and probably he requested the defendant in the negotiations to insist upon $8,000 as the lowest sum he was willing to take. When the contract was reduced to writing, both the plaintiff and Grant were interested in the purchase in the proportion of three-fourths to Grant and one-fourth to the plaintiff; but whatever moneys were paid by the plaintiff were immediately paid back to him by the defendant. This was all kept from the knowledge of Grant, who doubtless supposed that the plaintiff was acting in the utmost good faith, and was paying $2,000 for his interest. Grant afterwards purchased the interest of the plaintiff, paid for the property, and took a deed. It is not denied that the defendant has received $8,000 for the property; nor is it denied that he originally agreed to pay the plaintiff $3,000 if he would find a purchaser at that sum. But the defendant now denies his liability to perform this agreement, on account of the alleged fraud practised by himself and the plaintiff upon Grant. He claims that the plaintiff is seeking to enforce a contract which was a part of a dishonest, corrupt and fraudulent scheme to induce Grant to pay $8,000 for property which the defendant was willing to sell for $5,000, and therefore that the plaintiff is not entitled to recover any part of the money which was obtained by their joint fraudulent conduct.

" On the trial, among other things, the court below instructed

Hardy vs. Stonebraker.

the jury that if they should find that through the joint fraudulent representations and conduct of the plaintiff and defendant, Capt. Grant was induced to pay for the land the sum of $8,000, and that the defendant — the plaintiff knowing it — would have been willing to take the sum of $5,000, or thereabouts, as a fair price for the lands, and pay thereon all claims he admitted against the land, the plaintiff could not recover in this action any part of the money obtained from Capt. Grant through such dishonest and fraudulent transaction. This charge was excepted to by the plaintiff, and its correctness and applicability to the facts of the case are the principal questions we have to consider on this appeal."

*Wm. E. Carter*, for appellant, argued that the maxim "*In pari delicto potior est conditio defendentis*" does not apply to this case ; that, to make it applicable, the contract between plaintiff and defendant, or their conduct, must have been immoral or illegal, must have worked injury to Grant, and been an intentional fraud upon him, such fraud being the work not of the plaintiff alone but of both these parties (Broom's Leg. Max., 702: 1 Story's Eq., §§ 203, 298, et seq.; 2 Parsons on Con., 769–772, 782); that there was no act done by both these parties to induce Grant to buy, unless it be alleged that they both agreed in misrepresentations relative to the price of the land, or the sum which defendant was willing to take for it; and that misstatements relative to the price which the seller will take for property, made during the course of the negotiations for a sale, do not constitute fraud. 1 Story's Eq., §§ 197–201 ; *Dupont v. Payton*, 2 E. D. Smith, 424 ; *Sandford v. Handy*, 23 Wend., 260 ; *Saunders v. Hatterman*, 2 Ired., 32 ; *Hawkins v. Campbell*, 1 Eng., 513 ; *Dugan v. Cureton*, 1 Ark., 41 ; *Lysney v. Selby*, 2 Ld. Ray., 1118 ; *Strong v. Peters*, 2 Root, 93 ; *Hill v. Bush*, 19 Ark., 522 ; *Fields v. Rouse*, 3 Jones' Law, 72 ; *Port v. Williams*, 6 Ind., 219 ; *Foley v. Cowgill*, 5 Blackf., 18 ; *Cronk v. Cole*, 10 Ind., 485 ; 2 Kent's Com., 485, 486. 2. He contended that the evidence showed the lands to be

worth the full price paid by Grant, and the latter therefore was not injured by the transaction ; and there can be no fraud where no one is injured.    2 Parsons on Con., 771, 772 ; 1 Story's Eq., § 203 ; *Ableman v. Roth*, 12 Wis., 90 ; *Castleman v. Griffin*, 13 id., 538 ; *Barber v. Kilbourn*, 16 id., 489 ; *Freeman v. McDaniel*, 23 Ga., 354 ; *Fuller v. Hodgdon*, 25 Me., 243 ; *Keller v. Johnson*, 11 Ind., 337 ; *Morgan v. Bliss*, 2 Mass., 111 ; *Otis v. Raymond*, 3 Conn., 413 ; *Ide v. Gray*, 11 Vt., 615.    3. The relation between Grant and the plaintiff was not that of partners, but merely that of tenants in common of the land after its purchase (3 Black. Com., 191 ; *Welch v. Sackett*, 12 Wis., 253), and plaintiff was under no obligation to disclose to his cotenant the terms upon which he obtained his own one-fourth interest, or give him the benefit of the arrangement. *Matthews v. Bliss*, 22 Pick., 48 ; *Thompson v. Salmon*, 18 Cal., 632 ; *Ragan v. McCoy*, 29 Mo., 356.    Nor was plaintiff the agent of Grant.    But even if his relations to Grant were such that the latter was entitled to the benefit of any bargain he might make with defendant, that is a matter with which defendant has no concern whatever.

*P. A. Orton* and *M. M. Cothren*, for respondent, contended that the case falls within the maxim " *Ex turpi contractu non oritur actio ;*" that while no compensation, however great, paid by defendant to plaintiff for making sale of the land to Grant, would of itself have been a fraud upon the latter, since in that case Grant would have treated with plaintiff as defendant's agent, and bought with his eyes open, the important fact here is, that plaintiff, while agent for the seller, formed a confidential relation with the buyer ; that whether the plaintiff and Grant became partners or not, it is certain that when they agreed to buy this land as tenants in common, each was bound to good faith with the other in negotiating for the purchase, and neither could secure an advantage by the purchase which the other was not entitled to share ; that each acted, in making the purchase, for himself and as agent for the other, and any advantage secured by one, like a bonus from the seller for making the

purchase, was a gross fraud upon his co-purchaser, for which the latter could maintain an action at law, or, by suit in equity, compel the fraudulent purchaser to hold such advantage in trust for him. Collyer on Part., §§ 170–180; *Leach v. Leach*, 18 Pick., 76; *Anderson v. Lemon*, 8 N. Y., 236; *Brown v. Lynch*, 1 Paige, 147. Besides, the plaintiff and defendant combined to defraud Grant in the sale of the land; and the sale was effected by absolutely false and fraudulent representations made by both of them as to the price really asked by the defendant for the land. Plaintiff cannot maintain an action to recover his part of the booty. 2 Parsons on Con., 279; *Bartle v. Coleman*, 4 Peters 184; *Bolt v. Rogers*, 3 Paige, 157; *Perkins v. Savage*, 15 Wend., 412; *Dedham Bk. v. Chickering*, 4 Pick., 314; *Nellis v. Clark*, 20 Wend., 24; *Moseley v. Moseley*, 15 N. Y., 334; *Chamberlain v. Barnes*, 26 Barb., 160; *Morgan v. Chamberlain*, id., 163; *Gale v. Gale*, 19 id., 250; *Miller v. Larson*, 19 Wis., 467; *Fargo v. Ladd*, 6 id., 106; *Swartzer v. Gillett*, 1 Chand., 208, and cases there cited; 4 Wash. C. C., 297. 2. A person interested as a purchaser cannot recover from the vendor commissions for making the sale, unless upon a contract to which all the parties to the purchase and sale are parties. *Watkins v. Cousall*, 1 E. D. Smith, 65; *Dunlap v. Richards*, 2 id., 281.

COLE, J. In the instruction given to the jury, as above recited, the circuit court in effect holds that the contract between the plaintiff and the defendant may be avoided if the parties had practiced a fraud upon Capt. Grant in inducing him to purchase the property for $8,000. But is it not plain that the agreement between the plaintiff and defendant was not unlawful, nor opposed to public policy? The counsel for the defendant admits — what surely could not successfully be controverted — that any commission, however great, agreed to be paid by the defendant as a compensation for making sale of his land, would not of itself be a fraud upon Grant. For, he says, in that case Grant would have treated with the plaintiff

as the agent of the defendant, and bought with his eyes open ; and had he paid a price larger than the defendant was willing to take, it would be his own folly, but that the defendant must nevertheless pay the agreed commission. But he argues and insists that on account of the confidential relation existing between the plaintiff and Grant, each was bound to act towards the other with the most scrupulous good faith and sincerity ; and that in making the purchase neither could secure an advantage which the other was not entitled to share. The counsel, however, in this argument loses sight of the real issue. This is not a controversy between Grant and the plaintiff, where the former is seeking redress for fraud and imposition practiced upon him by the latter, or by both him and the defendant. That is a different matter, and is independent of this agreement which the plaintiff is seeking to enforce. For, as we have already remarked, the contract between these parties was a legal one — not vitiated, as we can see, by the alleged fraud practiced upon Grant. It matters not what fraud and misrepresentation were employed to induce Grant to purchase the property and pay $8,000 therefor, since the cause of action here is unconnected with, or is not founded upon, that illegal transaction. The test is, Was the contract upon which the plaintiff is seeking to recover, void for fraud, or one which springs *ex turpi causa?* It seems to us that it is not. It is obvious that the defendant is seeking to avail himself of a fraud practiced upon Grant to defeat a recovery upon a valid contract. We assume, for the purposes of the argument, that the conduct of these parties in making the sale to Grant was illegal and fraudulent, for which the law will afford him redress. And yet, if this cause of action is unconnected with the illegal transaction, and is founded upon a distinct and independent contract, it will not be affected by their subsequent unlawful conduct. When this agreement to pay this commission was entered into, the parties had no reference to Grant, nor any other individual. And this agreement was unobjectionable in law or

Hardy vs. Stonebraker.

morals. But afterwards, in making the sale, the allegation is, the parties were guilty of fraudulent conduct and misrepresentations in inducing Grant to pay $8,000 for the property, when the defendant was willing to take $5,000. Suppose they were: let them answer, then, to the party injured. The maxim relied on by the counsel for the defendant, *Ex turpi contractu non oritur actio*, does not, as it appears to us, apply to the case. The court is not here lending its aid to enforce the performance of a contract which is illegal, or which is opposed to public policy, or founded upon an immoral consideration. No such objection to the validity of the contract sued on can justly be taken. The fraud which the court below seemed to think vitiated this contract, related to another matter and to a different transaction. The maxim above referred to is undoubtedly well established in the law, and it is not intended to violate it in this decision. That a court of justice, as a rule, "will not interfere between parties equally guilty, to adjust their controversies and apportion the shares to which they are respectively entitled accruing from a fraudulent, illegal and immoral enterprise," is a doctrine too well settled to admit of controversy. But the applicability of that rule to the actual case before us is not apparent. The question presented upon the record is quite kindred in principle to the questions involved in the cases of *Dyer v. Horner*, 22 Pick., 253; *Haney v. Varney*, 98 Mass., 118; *Brooks v. Martin*, 2 Wallace (U. S.), 70; *Phalen v. Clark*, 19 Conn., 421; *Lemon v. Grosskopf*, 22 Wis., 447; and *Clemens v. Clemens*, 28 id., 637; and is well illustrated by the discussions there found.

We have confined ourselves to a consideration of the applicability and soundness of the above charge, and really those are the only material questions raised by the exceptions. We think the charge was not strictly applicable to the facts, and it was certainly calculated to prejudice the case of the plaintiff.

For these reasons the judgment of the circuit court must be reversed, and a new trial awarded.

*By the Court.*— So ordered.