Grant vs. Hardy.

## GRANT VS. HARDY.

PURCHASE AND SALE. (1, 2) *Joint purchaser or partner not allowed advantage of private understanding with vendor.* (3) *Joint purchase for mining operations a partnership.* (4) *Money realized by joint purchaser in fraud of co-purchaser recovered back.* (5) *Effect of liability to third party.* (6) *Broker may recover commissions, regardless of fraud toward co-purchaser.*

1. S. employed H. as his agent to sell a certain tract of land, promising to pay him as commission all that he should sell the land for in excess of $6,000. H. thereupon procured G. to become a joint purchaser thereof with himself, concealing from him the fact the he was acting as the vendor's agent, and inducing S. to demand and G. to agree to $8,000 as the purchase price. Such joint purchase was made, and S. conveyed a three-fourths interest to G., who paid $6,000 therefore, and a one-forth interest to H., who pretended to G. that he paid two thousand therefor, but in fact, according to his agreement with H., received back the money as commission. *Held,* that the transaction as between H. and G. was a fraud upon the latter, and the law would not allow H. to retain any advantage of such fraud.

2. Whether G. and H. made the arrangement as a *partnership* venture, or, without any partnership relation, became *joint purchasers* (each becom-

Grant vs. Hardy.

ing liable to S. for the whole purchase money, and each standing, therefore, in the relation of *surety* to the other), in either case there was a *fiduciary relation*, which made the transaction a fraud by H. upon G.

3. The vendees having purchased the land for the purpose of carrying on jointly mining operations thereon, this constituted them a *partnership* as to such mining operations.

4. G., without knowledge of the fraud, subsequently paid H. $2,100 for the one-fourth interest of the latter. Afterwards, in an action to recover that amount, G. had a verdict and judgment for $1,000 damages. On H.'s appeal, the judgment is affirmed.

5. The fact that H., before said purchase from S., had agreed with other persons to pay them a part of the commission received from S., will not prevent G. from recovering the amount by him paid to H. in consequence of the fraud.

[6. A broker who engages for a commission to find a purchaser of land at such price as may be agreed upon between such purchaser and the vendor, and then becomes himself the purchaser in whole or in part, the vendor accepting him as such, may recover the commission upon clear proof that such was the understanding upon the part of the vendor at the time of the sale (*Stewart v. Mather,* 32 Wis., 344); and the fact that in effecting the sale the broker has acted *in fraud of his co-purchaser,* will not affect his right to the commission as against the vendor. *Hardy v. Stonebraker,* 31 Wis., 540, approved. Per COLE, J.]

APPEAL from the Circuit Court for *Iowa* County.

*Grant* brought his action against *Hardy* to recover the sum of $2,100 which he had paid him for a one-fourth interest in certain mining lands, originally purchased by the two jointly of one Stonebraker for the consideration of $8,000, *Grant* taking an undivided three-fourths by the conveyance from Stonebraker, and *Hardy* an undivided one-fourth. The complaint. alleged that *Hardy* had arranged with Stonebraker that the purchase price should be $6,000, but that Stonebraker and *Hardy* had conspired together to induce plaintiff to make the purchase with *Hardy* at $8,000, thereby enabling the latter fraudulently as against plaintiff to get title to an undivided one-fourth, without payment of any purchase money; and that plaintiff after-

Grant vs. Hardy.

wards, without knowledge of the fraud, purchased *Hardy's* fourth for $2,100, which is the sum here sought to be recovered.

The evidence was somewhat conflicting, but it satisfactorily appeared that the sale was negotiated through *Hardy*, who procured *Grant* to make the purchase; that Stonebraker had agreed with *Hardy* to take $6,000 for the land, *Hardy* stating that he had represented to *Grant* that the purchase price would be $8,000, and requesting Stonebraker to adhere to this price, as it would thereby enable him, *Hardy*, to get his one-fourth clear. Stonebraker assented to this arrangement, understanding that he was to receive only $6,000. *Hardy*, in all his conversations with *Grant* concerning the purchase, represented to him that the price would be $8,000, and that the land could not be obtained for less. *Hardy* brought *Grant* to Stonebraker's house, where the bargain was concluded and an agreement given for the conveyance of the premises to the two upon payment of $8,000, a three-fourths interest to be conveyed to *Grant*, and one-fourth to *Hardy*. Several payments were made in this proportion, but in each instance Stonebraker handed back to *Hardy* the amount of his payment, without *Grant's* knowledge. The conveyances were made to the two jointly in the proportion already indicated. *Grant* afterward purchased *Hardy's* one-fourth interest for $2,100, but on learning subsequently that the actual price paid Stonebraker was only $6,000, he brought this action. Verdict for plaintiff for $1,000, and judgment thereon, from which defendant appealed.*

*William E. Carter*, for appellant, to the point that a mere purchase by the parties as tenants in common imposed upon them no such obligation as to prevent *Hardy* from securing an advantage to himself which *Grant* could not share, cited

---

* NOTE — *Hardy* had previously brought an action against Stonebraker, to recover a sum claimed to have been received by the latter on account of the former for services in effecting the sale to *Grant*. In that action a judgment was rendered for defendant which was reversed by this court. See *Hardy v. Stonebraker*, 31 Wis., 640. REP.

Grant vs. Hardy.

*Matthews v. Bliss,* 22 Pick., 48; *Thompson v. Salmon,* 18 Cal., 632. In this case there was no partnership or community of funds between the purchasers, and no question could arise of an abuse of trust as in cases of partnership. Each bought and paid for his own share with his own money and in his own way. Even if they purchased together, each binding himself to pay the whole purchase price, it constituted simply the relation of principal and surety, requiring good faith towards each other only so far as the repayment of what one might pay for the other is concerned.

*Orton & Osborn* and *M. M. Cothren,* for respondent, insisted that the relation between *Hardy* and *Grant* made each the agent of the other in negotiating the joint purchase, and each the surety of the other in the payment of the purchase price. 1 Willard's Eq., 191, 192; 1 Parsons on Con., 21–25. *Hardy,* then, being *Grant's* agent for making the purchase, and the latter being the surety of the former for his part of the purchase money, *Hardy* can stipulate with the vendor for no secret advantage in the sale. Any such stipulation is a fraud upon the rights of *Grant,* and he may recover his proportion of any such advantage so clandestinely received. *Dunlop v. Richards,* 2 E. D. Smith, 183; *Watkins v. Cousall,* 1 id., 66; *Pugsley v. Murray,* 4 id., 245; *Walker v. Osgood,* 98 Mass., 348; Tiffany & Bullard on Trusts, 485. To the point that the same principles were applicable to the relationship of principal and surety in this case as to the case of partners, counsel cited Willard's Eq., 191; *Reid v. McNaughton,* 15 Barb., 168.

COLE, J. If this case were to be decided according to the principles of ethics and social duty, there would be little difficulty in saying what the judgment ought to be. For it seems to us very plain that even accepting the defendant's own account of the manner in which the plaintiff was induced to purchase the land of Stonebraker, still the defendant, in leading him on in the negotiation, was greatly wanting in candor

and open dealing, if he was not guilty of duplicity and deceit. According to his own admissions, he carefully concealed from the plaintiff the important fact that he was acting as the agent of the vendor, and of course, under the understanding he had with him, was directly interested in having the land sold for the best possible price, while apparently his interests were not in conflict with those of the plaintiff in the matter. Now it is very obvious, if the plaintiff had really been aware of the fact at the outset that the defendant was acting as the agent of the vendor in making the sale, he would have been more upon his guard, less likely to rely upon defendant's statements and opinions in regard to the value of the land and its mineral wealth, than he would be while regarding him as a disinterested party. The line of conduct which he adopted was doubtless intended to throw the plaintiff off his guard, and it had the desired effect, on the defendant's own statements.

But we confess that we can not accept the defendant's account of the circumstances under which the purchase was made, as altogether reliable. On the contrary, while he states that he was not interested in the purchase in the first instance, but that the plaintiff subsequently sold him an interest in the subject matter of the contract previously made, we are quite well satisfied that he was interested as a joint purchaser from the beginning, and that it was so understood by all parties at the time. To our minds, this fact is abundantly established by the testimony, and the case will be disposed of upon this assumption. And here it may be observed, that in the written contract entered into on the 29th of May, 1868, between Stone-braker of the first part, and the parties to this suit of the second part, the defendant appears as a joint purchaser of a one-fourth interest in the land, while the plaintiff is the purchaser of the other three-fourths; and we are satisfied from this and the other testimony bearing upon the point, that it was understood from the commencement of the negotiations which resulted in this agreement, that he was to hold this relation. The truth then

was, while the defendant was really acting as the agent of the vendor and directly interested in selling the property for the most which could be obtained for it, since he was to have all that could be realized above a specified amount, he became a joint purchaser with the plaintiff, but concealed the fact from him that he was acting for the other party and was to pay nothing for his interest. And upon these facts, the question arises, Will the law allow the defendant to have the advantage of a bargain made under such circumstances, and may he hold from the plaintiff all over and above what the vendor was willing to take, and what in fact he received for the property, or were the defendant's acts fraudulent in respect to the rights of the plaintiff?

When the case of *Hardy v. Stonebraker*, 31 Wis., 640, was before this court, which was an action by the present defendant to recover the commissions which the vendor had agreed to pay, it was thought that so far as that suit was concerned, it did not lie in the mouth of the vendor to say that a fraud had been practiced upon the plaintiff in inducing him to make the purchase, and that this constituted no defense in that action. For the agreement to pay the commission on the part of the vendor was a lawful contract, and was distinct from that purchase. We could not, therefore, see how it could be affected by the alleged fraud subsequently practiced upon the plaintiff. The validity of the agreement to pay the commission was the only question involved, and was really the only point which was properly raised upon the record. But since that case was decided, we have had occasion to consider the question, whether, when a broker merely engages to find a purchaser at such a price as may be agreed upon, and becomes the purchaser himself — the vendor, with full knowledge of his character treating with him as a purchaser and a sale being consummated — whether, upon these facts, the commissions can be recovered. And it was held that there was nothing in the policy of the law which would forbid a recovery in such case, and that the action could

be maintained, providing the proof was clear and satisfactory that the broker or agent became the purchaser under the agreement to pay the commission, and with an understanding to that effect on the part of the vendor when the sale was made. (*Stewart v. Mather et al.*, 32 Wis., 344.) Within the doctrine of the case just referred to, the plaintiff in *Hardy v. Stonebraker* was clearly entitled to recover, and the decision there is in entire harmony with it. For, in the Hardy case, it was perfectly clear that Stonebraker knew that his agent was to become interested in the purchase, and it was understood that he was to have his commission when the sale was made. There was no abuse of confidence on the part of the agent, for the principal well knew the character of the party with whom he was dealing, and consented to his becoming a joint purchaser of the land. As a matter of course, there is no room for charging the agent with any abuse of confidence growing out of the fiduciary relation subsisting between the parties, when the agent thus becomes the purchaser with the full knowledge and assent of the principal, and under the agreement to pay the stipulated commission.

The case before us presents another question, and calls for the application of a somewhat different principle. It would seem to be governed by the doctrine recognized and enforced by the authorities, and generally stated as follows: "Wherever parties stand in such a relation, that, while it continues, confidence is necessarily reposed by the one, and the influence which naturally grows out of the confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not be impeached if no such confidential relation had subsisted." Kerr on F. & M., 150; 1 Story's Eq. Jur., § 323; Willard's Eq. Jur., 169; and *Tate v. Williamson*, L. R., 2 Ch. App., 61.

The counsel for the plaintiff claims and insists that the facts established by the evidence bring this case fully within the range of this principle of law, and we are inclined to the opinion that this view must be sustained. Was there, then, anything in the relation of these parties which required the defendant to disclose the fact that he was acting as the agent of the vendor, and which also bound him to inform the plaintiff what the property might be bought for, and which forbids him to take a benefit from the party towards whom he stands in this relation? We think there was.

It has already been remarked, that by the written contract, the plaintiff and defendant became joint purchasers of the real estate therein described, in certain proportions. The contract itself, and the other evidence, show the object the parties had in view in buying this property. The purchase was "for the purpose of operating or digging for lead ore in and upon said land, and to work and mine the same;" and it was stipulated that the vendees should have immediate possession to prosecute this work. And it also appears that, in accordance with this original purpose in making the purchase, the vendees did in fact, in the following August, commence their mining operations, and spent considerable money in running a level to drain the tract of land, each party paying his share of the expense. This constituted a partnership so far as the mining operations were concerned; and the facts show that the land was negotiated for and obtained for this contemplated partnership adventure. The defendant, then, while holding this relation to the plaintiff, and while engaged in negotiating for the property for this joint speculation and partnership enterprise, had a private understanding with the vendor to ask $8,000 for it, in order that the plaintiff should pay for his interest all that the entire estate was worth, and the defendant thus get his interest for his commissions. And it is admitted that, for the purpose of deceiving the plaintiff as to the real character of the transaction, the arrangement between the vendor and defendant was,

that the latter should pay his share of the purchase money over in the presence of *Grant*, but the same money was to be paid back. And this was in fact done, so far as all payments made by the defendant were concerned. The defendant says that his commissions were to be divided with his father and Dr. Lee; but this circumstance does not change the legality of the transaction. It was, as it appears to us, a fraud upon the rights of the plaintiff for the defendant thus to act while holding the relation he did; and it seems impossible for a court to sanction and uphold such a transaction. The policy of the law prohibits a person standing in the fiduciary relation of a partner from obtaining such an advantage at the expense of the party whose interests he is in duty bound to protect. *Fawcett v. Whitehouse*, 1 Rus. & Mylne, 132; and *Hickens v. Congreve*, note B. to above case.

The court below, however, did not hold that a fiduciary relation subsisted between the plaintiff and defendant because they were partners at the time of the purchase, or because the property was purchased for a partnership adventure, but that it would be sufficient to constitute such a relation if the purchase was a joint one, each purchaser becoming responsible for the entire purchase money. In such a case the court thought the same good faith should be observed between the purchasers as in the case of a partnership, because of this relation of prinpal and surety. That the court was correct in its construction of the written contract is plain. Each vendee was liable to the vendor for the whole purchase money, and he had no right to demand a conveyance from Stonebraker of his interest until it was paid. When the consideration money was paid, then the vendor undertook and agreed to convey the undivided three-fourths to the plaintiff, and the undivided one-fourth to the defendant. The contract thus created the relation of principal and surety, rendering each responsible for the payment of the other's share of the purchase money. Now the authorities hold that "the principles which govern the case of dealings of

persons standing in a fiduciary relation apply as between partners, between principal and surety, and generally to the case of persons who clothe themselves with a character which brings them within the range of the principle." Kerr on F. & M., 182. This relation of principal and surety existing between the plaintiff and defendant imposed upon them good faith and confidence in regard to the whole transaction of purchasing this property. Suppose the plaintiff had paid his $6,000, and the vendor had refused to convey: could he have obtained a title to his interest without paying also the other $2,000 ? It seems to us that he could not. Again, suppose the defendant had been compelled to pay, or rather had paid, the amount Stonebraker asked for the land ? Could he have recovered this entire amount from the plaintiff as so much money paid to his use? If he could, the law would surely allow him to recover of his principal more than he had actually paid for his three-fourths interest. These questions show that the parties stand in a somewhat different relation to each other from ordinary tenants in common, who are merely interested in the same property. They "stand in such a relation of mutual trust and confidence towards each other" in respect to the purchase of the real estate, that they were bound to communicate all the information within their knowledge in regard to it. In the negotiations about the purchase, it is very evident the defendant abused and betrayed the confidence reposed in him, and his conduct about making his payments was deceitful and false. He ought not to be benefited by a course of dealing so tainted with dishonesty and bad faith. It is suggested on the brief of counsel for the defendant, that the plaintiff paid no more for his interest than it was actually worth. That may be so ; still it does not affect the question we are considering. If a fiduciary relation subsisted, it imposed upon each the duty of acting, relative to the subject matter, for the best interest of the other. And this affords a sufficient answer to the further suggestion, that the defendant had entered into an arrangement with his

father and Dr. Lee, to share his commissions with them, and therefore the plaintiff ought only to recover what the defendant would receive and realize under that arrangement. But it is very clear the defendant could not obtain money from plaintiff by fraud, and retain it for any purpose. We do not think the defendant has any ground to complain that the verdict is excessive.

We are of the opinion that the judgment of the circuit court is correct and must be affirmed.

*By the Court.*—Judgment affirmed.