### 8502

### ROUNTREE v. INGLE.

Lottery—Fraud.—A merchant giving cards to his customers, bearing numbers for goods purchased, placing a number corresponding to each card in a box, drawing out one and giving to the holder of the corresponding numbered card an article as a prize, is engaged in a lottery, and so are the parties accepting the cards. One holding the winning card cannot maintain an action for the article given for it against another who held a card of the winning number, and obtain the article with it, whether obtainel by fair or dishonest methods.

Before Sease, J., Union, Summer term, 1912. Reversed.

Action by T. J. Rountree against Ardella Ingle and W. F. Ingle, before J. Frost Walker, Jr., magistrate. Defendant appeals from judgment of Circuit Court.

*Mr. Jno. K. Hamblin,* for appellant, cites: *Cause of action is based on a lottery:* Crim. Code 199; Mills 297; 14 Ency. 600, 602; 147 U. S. 449; 8 L. R. A. 671; 69 L. R. A. 505; 19 Ency. 598. *No proof of cause of detention:* 88 S. C. 429. *No proof of demand:* 89 S. C. 535; 1 McM. 428; 2 Strob. Eq. 370; 11 Rich. 267; 45 S. C. 388; 48 S. C. 421; 60 S. C. 103.

*Mr. J. Ashby Sawyer,* contra, cites: *This action is not based on a lottery:* 2 Mill 128; 1 Bail. 315; 45 S. C. 372; 3 Dess. Eq. 125; 40 S. C. 553; 25 Cyc. 1653. *Whether demand was made was for jury:* 27 S. C. 243; 59 S. C. 497; 45 S. C. 388; 34 Cyc. 1406; 24 Ency. P. & P. 506; Cobbey on Rep., secs. 447, 450, 93 419; 34 Cyc. 1388-9. *Not necessary to prove actual value of stove:* 30 S. C. 327; 32 S. C. 171.

April 2, 1913. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Sometime in 1911, Bailey Furniture and Lumber Company, of the city of Union, issued the following printed circular: "An elegant range free. In order to advertise their high grade stoves and ranges the Crescent Stove Works of Evansville, Ind., are furnishing us this $65 range free to give away to our customers. It will not cost the one who gets it a brownie. * * * trade with us, and in addition to getting more and better goods for the money, we give you a numbered card, a duplicate of which is placed in a box from which a number will be drawn and the one holding the corresponding number will get the range, which will be given away about the first of October. Every dollar you spend with us before that time gets you a chance at the range. Hold your tickets and watch our ad the first week in October and see who gets the range. It may be you if you trade with the Bailey Furniture and Lumber Company, the home furnishers and home builders,

Union, S. C." A cut of the range was attached to the circular.

The card numbered 1616 was drawn from the box, and upon that card being presented by the defendant, Ardella Ingle, the range was delivered to her. The plaintiff, T. J. Rountree, then brought this action in a magistrate's court to recover the range from the defendant. At the trial he offered testimony in substance as follows: Plaintiff made a purchase from Bailey Furniture and Lumber Company and received cards numbered from 1604 to 1639; in consequence of hearing that 1660 was the number of the card drawn, he dropped all of his cards in the yard; when he found out that the card drawing the range was 1616, which he had held, he tried to find it among those thrown out but failed. On the part of the defendant, Ardella Ingle, the testimony was to the effect that she had acquired the card 1616 among others given her when she made a purchase at the store of Bailey Furniture and Lumber Company. The magistrate held as matter of fact that the plaintiff originally held the card; that it was among those which he dropped in his yard; and that some one had found it there and had given it to the defendant, Ardella Ingle; and he adjudged the range to be the property of the plaintiff. The defendant on appeal to the Circuit Court contended that even if the facts be as found by the magistrate, yet the plaintiff could have no relief, because his entire claim was founded on a lottery drawing, and that the Court, in accordance with the well established policy of the law in such cases, would give no relief, but leave the parties where it found them. The Circuit Judge held otherwise and affirmed the judgment of the magistrate.

There can be no doubt that the scheme under which the winning card was drawn was a lottery. On this point the authorities seem to be unanimous. 26 Cyc. 1637; 14 Am. & Eng. Enc. 602, and cases cited. Our statute makes not only the promoter of a lottery, but the adventurers in it,

liable to indictment. Criminal Code of 1912, secs. 256
and 260. Under these sections the purchaser of a lottery
ticket is in *pari delicto* with the seller. The purchase being
a criminal act, the purchaser can base no legal claim thereon
for the money paid to the seller or to the prize allotted to his
ticket. Indeed, his whole transaction is without the pale
of the law, and he cannot invoke the aid of the Courts in
enforcement of any claim depending on it. The purchaser
of a lottery ticket in this State is, therefore, in a different
plight from one who loses money in gambling or dealing in
cotton futures, who may recover the amount paid out.
Civil Code of 1912, sections 3417-3423. The plaintiff in
the present case, having acquired his ticket in violation of
the statute which made the acquisition of it criminal, it fol-
lows that his claim does not fall under cases like *Martin* v.
*Richardson* (Ky.), 19 L. R. A. 692, and *Becker* v. *Wilcox*
(Neb.), 16 L. R. A. (N. S.) 571, 116 N. W. 160, decided
on the ground that the purchaser was not guilty of any crim-
inal act, the statute against lotteries being enacted for his
protection against those who conduct them.

Nor will it aid the plaintiff that the magistrate and Cir-
cuit Judge found that the defendant acquired the winning
ticket by unfair means, and presented it and obtained the
prize offered under the false pretense that she had received it
from the merchant who gave them out. The principle thus
stated by Lord Mansfield in *Holman* v. *Johnson,* 1 Cowper
343, is universally recognized: "The objection that a con-
tract is immoral or illegal, as between the plaintiff and the
defendant, sounds at all times very ill in the mouth of the
defendant. It is not for his sake, however, that the objec-
tion is ever allowed; but it is founded in general principles
of policy which the defendant has the advantage of, con-
trary to the real justice, as between him and the plaintiff,
by accident, if I may say so. The principle of public policy
is this: *Ex dolo malo non oritur actio.* No Court will lend
its aid to a man who founds his cause of action upon an

immoral or illegal act. If from the plaintiff's own stating
or otherwise, the cause of action appears to arise *ex turpe
causa,* or the transgression of a positive law of this country,
there the Court says he has no right to be assisted. It is
upon that ground the Court goes; not for the sake of the
defendant, but because they will not aid the plaintiff. So if
the plaintiff, and the defendant were to change places, and
the defendant was to bring his action against the plaintiff,
the latter would then have the advantage of it, for where
both are equally in fault, *potior est conditio defendentis.''*
The authorities in this State are full to the effect that where
a plaintiff brings into Court a claim which has no other
support than a contract forbidden by law, he cannot recover.
*McConnell* v. *Kitchens,* 20 S. C., 430.

The ultimate question, then, is whether the plaintiff has
any basis for his claim beyond the lottery drawing; for the
principle is well settled that where there has been another
and independent contract, not forbidden by law, even
though it be with respect to the proceeds of an illegal con-
tract, the independent contract is enforcible. The case of
*Owen* v. *Davis,* 1 Bail. 315, is an example of an independ-
ent contract of this nature. There the plaintiff and the
defendant had won at cards from one Murray, who gave
his note to the defendant for the amount. The defendant
collected a part of the note, and the action was to recover
plaintiff's share of the amount collected, which the defend-
ant refused to turn over. The Court held in effect that the
action did not depend on any right to collect a gambling
debt or to enforce a gambling contract, but that the contract
of the defendant to hold the note and the proceeds for him-
self and the plaintiff was entirely separate, and that Murray
having chosen to pay the debt, the defendant was bound to
pay the plaintiff his share. This was on the principle that
it was not necessary to plaintiff's recovery to allege or prove
the gambling transaction, but only that the defendant had
received a note from Murray for himself and as trustee for

the plaintiff, and had collected money thereon.    In the decision the Court applied the long settled test of recovery, namely, whether there is a legal obligation in favor of the plaintiff against the defendant separate from the illegal transaction and requiring no aid from it.    *Owen* v. *Davis, supra; Anderson* v. *Moncrieff,* 3 DeS. 124; *Tate* v. *Pegues,* 28 S. C. 463, 6 S. E. 298; *Packard* v. *Byrd,* 73 S. C. 1, 51 S. E. 678; *Union Pac. Ry. Co.* v. *Durant,* 95 U. S. 576, 24 L. Ed. 391, 9 Cyc. 556, 557, 558; *Lemon* v. *Grosskopp,* 22 Wis. 447, 99 Am. Dec. 58, and note.

The plaintiff's case must fail under this test.    He alleges title and right of possession to a range in the possession of the defendant, Ardella Ingle.    The defendant denies his title and sets up an adverse title in herself.    There was no independent contract between the plaintiff and the defendant that the plaintiff should have the range, or that the defendant would accept it or hold it for him as his agent.    His claim has for its sole foundation a title alleged to have been acquired by reason of the fact that he held, in violation of the laws of the State, the winning card in a lottery contest, and that the range was drawn as the prize, in violation of the laws of the State.    There is no independent or collateral contract of any kind upon which the plaintiff can depend.    Using an extreme illustration: if after the drawing and before the delivery to the plaintiff by the merchant the range had been stolen from the store, the plaintiff could not have recovered from the thief, because he would have had no basis of claim except a lottery card and a lottery drawing, both denounced by the statute law of the State.

Reversed.