COPELAND v. HORNIK.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1914.)

No. 1235.

HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—VALIDITY—SCHEME IN FRAUD OF BANKRUPTCY ACT.

By an agreement between a bankrupt and a creditor, the creditor agreed to advance money to effect a composition for which, together with his own claims in full, he was to be secured by the bankrupt. The creditor made certain advances for the purchase of other claims against the bankrupt, and, by the aid of the votes so secured, he forced acceptance of the composition: but the court refused to confirm it. The wife of the bankrupt executed a mortgage on her separate property to secure the amount agreed upon between the creditor and bankrupt. It appeared that she made the mortgage for the general purpose of aiding her husband in the composition, but without knowledge of the fraudulent means by which it was to be brought about. Held that, the scheme being fraudulent, and the advances made pursuant thereto, and not for the benefit or advantage of the mortgagor who was not a party thereto, the mortgage as to her was wholly invalid.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 351–358; Dec. Dig. § 171.*]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by the trustees of H. C. Copeland and H. C. Copeland and Company, bankrupts, against Mrs. C. J. Copeland and M. Hornik. Appeal by Mrs. Copeland from a decree in favor of Hornik. Reversed.

See, also, 216 Fed. 120, 132 C. C. A. 364.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Stanwix G. Mayfield, of Denmark, S. C. (Mayfield & Free, of Bamberg, S. C., on the brief), for appellant.

T. M. Mordecai, of Charleston, S. C., for appellee.

WOODS, Circuit Judge. The complainants as trustees of the bankrupts, H. C. Copeland and H. C. Copeland & Co., on March 8, 1912, filed their bill in the District Court asking, among other things, that a mortgage executed by Mrs. C. J. Copeland, wife of the bankrupt H. C. Copeland, to M. Hornik, be declared void and that the tract of land covered by it containing 175 acres claimed by Mrs. Copeland be adjudged the property of the bankrupt. Answers were filed by the defendants raising several issues, among them the answer of M. Hornik setting up his mortgage as a valid lien on the land, and the answer of Mrs. Copeland claiming the land as her own, but alleging the invalidity of the mortgage executed by her to Hornik. In the course of the proceedings all issues have disappeared except the contest between Hornik and Mrs. Copeland as to the validity of her mortgage to him and of the debt claimed thereunder. The referee to whom the cause was referred reported as a conclusion of law that the mortgage was entirely invalid. The District Court held it valid to the amount of the several sums actually advanced by Hornik on the faith of the security, and Mrs. Copeland appeals.

The controversy depends on one issue of fact which will be made evident by a short statement of the circumstances under which the mortgage was given. H. C. Copeland, the bankrupt, being desirous of making a composition of his debts, agreed with H. M. Graham, an attorney, that Graham should procure for him $15,500, and with this sum effect the composition. Hornik made a separate agreement with Copeland to "accept drafts of H. M. Graham, attorney for H. C. Copeland, for ten thousand six hundred twenty-five dollars ($10,625.00) in payment of composition, including cost of administration and accounts of M. Hornik & Co. and M. Hornik's connectional firms—including fees of the different lawyers representing the claims against the bankrupt's estate." Copeland contracted to secure Hornik by mortgages including a mortgage on the tract of 175 acres, then supposed to be his property. Afterwards, when it appeared that this land belonged to Mrs. Copeland, she executed a mortgage to Hornik conditioned for the payment of "the full and just sum of fifteen thousand five hundred dollars as per the terms of certain drafts drawn and to be drawn by H. M. Graham, attorney for the said H. C. Copeland, upon the said M. Hornik & Co., together with any other amount of indebtedness that may be by the said H. C. Copeland hereafter contracted with the said M. Hornik while he holds this security whether same be evidenced by notes, drafts, open account or otherwise, according to the terms as may be agreed." Hornik paid drafts of Graham amounting to $3,760.02.

By the vote of Hornik, representing his own debt and the debts assigned to him in consideration of drafts drawn on him by Graham in favor of creditors of Copeland, the composition was carried at the meeting of creditors. But the District Court refused to confirm it on

the ground that it was contrary to the manifest intention of the bankruptcy statute that a creditor should force a composition by voting claims purchased at less than their full value on a promise from the bankrupt to pay his original claim and the assigned claims in full.

Not only was the scheme fraudulent against the creditors of the bankrupt, but it is manifest that the acceptance of a security or money by any of the parties to it, from another person who was trying to aid in securing a supposed lawful composition in ignorance of the facts which made the scheme undertaken unlawful, would be a fraud upon such person; and this for the reason that the parties to the unlawful scheme are chargeable with knowledge that the scheme would fail and that the security or money would be wasted.

It is not disputed that the purpose of Mrs. Copeland in giving the mortgage was to get through the composition and put her bankrupt husband on his feet. Hornik was fully apprised that this was her purpose, and he undertook to use the proceeds of the mortgage for that purpose, in the illegal manner agreed upon by himself, Copeland, and Graham. Not only is he presumed as a matter of law to know that the scheme was illegal, but there can be no doubt that as an intelligent business man he in fact knew that it was unfair and fraudulent, and that it would be struck down unless the parties to it concealed it from the court. In short, he accepted the mortgage from Mrs. Copeland and paid out money and charged it to her on the faith of the mortgage, when he was chargeable with knowledge that the payments would avail nothing towards legally effecting the purpose for which he undertook to use the mortgage—the composition with Copeland's creditors.

This brings us to the vital issue of fact in this phase of the case, whether Mrs. Copeland was a party to the illegal scheme or authorized the mortgage to be used as security for drafts drawn in carrying it out. Hornik could not charge to Mrs. Copeland the money uselessly paid out in forwarding the illegal scheme unless Mrs. Copeland made the mortgage with knowledge of the facts which made the scheme of composition illegal, and thus authorized the useless disbursement of money for her account. Further, since Hornik was a party to the illegal contract looking to the composition and was to receive large profit from it, as a condition of putting the loss and failure due to its illegality on Mrs. Copeland, he must assume the burden of showing that she knew of the features of the plan which would make it abortive and with that knowledge gave the mortgage. The record does not show that he made this proof. On the contrary, the evidence tends to the conclusion that Mrs. Copeland was an untutored woman, knowing little of the details of business affairs; that she knew her husband was trying to effect a composition with his creditors and that she gave the mortgage to Hornik to aid in this purpose; that she was assured by Graham when she gave the mortgage that the composition had gone through and that nothing remained to be done except to procure the confirmation of the judge. In all this there was nothing to suggest to her the facts constituting illegality. She testified without contradiction that she was assured by Graham that the mortgage would be returned if the confirmation failed and that she executed it with this understanding. Had she known that the mortgage was to be used to buy up debts of her

husband in order to get votes to carry the composition, she would have known it could not be returned even if the composition failed. It is true that Graham testified Mrs. Copeland knew "practically all the business transactions that we were having," but he gives no facts warranting this expression of opinion. On the contrary, his account of his conversations with Mrs. Copeland indicates that she intended to give the mortgage for the legal purpose of paying the creditors the amount agreed on after the composition had been confirmed by the court. Our conclusion is. that Hornik paid out the sums which he seeks to charge against Mrs. Copeland's mortgage in furtherance of a scheme to put through a composition with Copeland's creditors by means which he knew to be illegal and ought to result in failure, that he has failed to show that Mrs. Copeland authorized the mortgage to be used in that way, or that she assented to the illegal method adopted to bring about the composition.

If it had been shown that Mrs. Copeland was a party to the illegal scheme and gave the mortgage to aid in carrying it through, it would be doubtful, to say the least, whether the bond and mortgage constituted such an independent contract as to enable Hornik to recover on it. Rountree v. Ingle, 94 S. C. 231, 77 S. E. 931, 45 L. R. A. (N. S.) 776; Railroad Co. v. Durant, 95 U. S. 576, 24 L. Ed. 391. But it is not necessary to decide that question.

It will be observed the facts do not make a case of implied contract by Mrs. Copeland, that is, a contract implied by the law to repay to Hornik money expended by him for her benefit; for the debts purchased by him were the debts of her husband and not hers, and the assignment of them to Hornik was of no benefit to her.

For these reasons we conclude that Mrs. Copeland owes Hornik nothing under the mortgage, and that it should be canceled.

Reversed.