# CHARLESTON.

### HARNE *v.* PIKE.

Submitted June 10, 1911.    Decided March 12, 1912.

ASSIGNMENTS—*Right to Commission.*

If a broker be employed by contract in writing to sell land on commission, and before or after procuring from his principal the execution of an option contract to a prospective purchaser, for a valuable consideration, sells and assigns to the optionee in such contract, all his right, title and interest in and to his commission contract, he cannot thereafter, on consummation of such sale recover of his principal the commissions stipulated for in his brokerage contract.

Error to Circuit Court, Mercer County.

Action by J. Lee Harne against Henry G. Pike.    Judgment for plaintiff and defendant brings error.

*Reversed and Remanded.*

*Bernard McClaugherty,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued defendant in *assumpsit,* for brokerage commissions for making sale of certain town lots in the City of Bluefield.    The court below rejecting all instructions proposed by defendant, peremptorily instructed the jury that plaintiff was entitled to recover seven hundred dollars, the amount sued for, with interest from the time the same was payable, less thirty eight dollars and seventy five cents, a part of the off-set claimed by defendant, and that they should so find by their verdict.    Accordingly the jury found for plaintiff, six hundred and eighty four dollars and sixty five cents, on which the court pronounced the judgment complained of.

On the trial plaintiff relied solely on a contract in writing, of October 3, 1906, between Loula C. Pike, the owner of the property, and defendant, her husband, of the one part, and A. S. Booker and W. S. Foutz, real estate brokers, of the other part,

which contract after partial execution by Booker and Foutz had come to plaintiff, first, by assignment by Booker of his interest to Foutz, on February 18, 1909; afterwards, by assignments by Foutz to Harne, first, of a half interest therein, on March 3, 1909, and, second, of his whole interest therein on September 13, 1909.

The original contract of October 3, 1906, employed Booker and Foutz, practically with unlimited powers, to plat into lots with streets and alleys a certain tract of land, and to sell the lots for one third cash, and the balance in two equal payments on a credit of one and two years, to be represented by negotiable notes, bearing interest, the deferred payments to be secured by deeds of trust on the property conveyed, the costs and expenses of making the sales, deeds of conveyance, deeds of trust, recording the same when not payable by the purchasers, to be borne by said Booker and Foutz, the parties of the first part in no event to be liable for any part thereof.

The contract further provided that Booker and Foutz were to proceed with great diligence to make sale of the lots, and that after deducting from the price five per centum for commission, they should turn over the residue of the cash payments and notes taken, to the parties of the first part, until the aggregate thereof, not including interest borne by the notes or collected by them and paid over, should amount to $32,000.00 the amount which the contract provided should be realized by them from the sales so to be made; whereupon, on demand, the contract further provided, said first parties should convey to Booker and Foutz, their heirs or assigns, or to such persons as they might designate, by metes and bounds, and with covenants of general warranty, all lots or parcels of land remaining unsold, as a further consideration or compensation for their services in the premises.

In the said several assignments of said contract the assignees thereof, for the consideration therein recited, respectively assumed any and all obligations thereof remaining unperformed, and in the final contract of September 13, 1909, between Foutz and Harne, Foutz covenanted that he had the right to convey said interest, and that the balance due him therefor, over and above the sum of $15,378.00, due on unsold real estate was not

more than $85.07, payment of which sums, subject to a condition unimportant here, was thereby assumed by said Harne.

Having thus acquired the entire interest of the brokers in said contract, and assumed their unperformed obligations therein, Harne, shortly afterwards began negotiations with the defendant Pike, who, in the mean time, by the death of his wife, and as her sole devisee, had become sole owner of the unsold lots, for the sale and purchase thereof, resulting finally, on October 23, 1909, in a contract in writing between Pike and E. W. Mollohan, whereby Pike agreed until December 23, following, for the consideration of $14,000.00, to be paid as stipulated, to sell and convey to Mollohan, all of said unsold lots, further describing them as the lots remaining unsold and referred to in the contract of October 3, 1906, purchased and then owned by plaintiff. This contract further provided that if the option thereby given should be exercised by Mollohan, within the time specified, Pike should convey to him said lots by deed with covenants of general warranty.

Plaintiff, within the time stipulated, elected to exercise his right of purchase given by said option contract, and by deed of January 1, 1910, Pike, Harne and wife, Foutz and wife, and Booker and wife, joining therein, for the consideration aforesaid, executed to Mollohan, a deed for said lots, reciting said several contracts and the several assignments thereof, and the desire of Mollohan, that those joining with Pike should join in said deed, for the purpose of conveying, releasing and quit-claiming all right, title and interest of every kind, if any, they or either of them might have in the property conveyed, and their joinder therein for that purpose.

On the consummation of the contract of sale by the making, execution and delivery of the deed to Mollohan the whole of the entire purchase money, represented by the cash payments placed to the credit of Pike in the bank of which Harne was cashier, and certificates of deposit of said bank, for the residue, was turned over to Pike, without claim by Harne or deduction of any thing by him for commissions. Some six weeks after delivery of the deed by Pike, however, and two days after the maturity and protest of one of the notes turned over to Pike and wife on prior sales, and which Pike had notified Harne he

should protect, Harne presented Pike a bill for the commissions sued for, demanding payment, which was declined. Wherefore this suit.

On the trial, besides the small bill of off-sets filed, Pike's defense, which he undertook to cover by his rejected instruction, was that when Harne began his negotiations for a lump sale and purchase of said lots, he represented to Pike that he proposed to form a syndicate, with Mollohan, as president, to purchase the lots, and that when on October 23, 1909, by the representations of Harne and the propositions of Mollohan communicated through him, he was induced to enter into said option contract, at a price that would net him over fifteen hundred dollars less than by the terms of the original contract of October 3, 1906, he and his wife were to realize for the property, and that he was thereby led to believe that Harne represented Mollohan and himself as members of a syndicate, or as officers of the bank, of which they were respectively president and cashier, and whose credit and certificates of deposit he was to and did accept in payment, and that he was in no way to be held liable, as he was not at the close of the transaction, for payment of commissions; otherwise he would not have sold the lots to Mollohan at the price agreed upon.

On the stand as a witness Pike swears, that he never saw Mollohan, that Harne communicated the proposition as coming from Mollohan, urged him to reduce the price, procured for him the option contract, and finally in the consummation of the contract, was apparently acting for Mollohan and associates, and himself paid over to Pike the money, deducted nothing, and at the time making no claim for commissions. In this connection he testifies as follows: "Q. To whom did you make the deed for this property? A. I supposed I was signing it to Mr. Mollohan, and Mr. Smith and the directors of the bank. He told me himself that he was getting up a syndicate to handle the lots. Q. Did he say anything about him being interested? A. No sir, he was just talking to me. Of course I knew he was one of them as he has money invested in it."

Harne in his testimony denies any interest in the purchase now or at any time. He admits that sometime in the summer before the option contract with Mollohan was prepared by him,

he told Pike and others that he proposed to form a syndicate to buy the lots, but says he failed to do so. He admits there was no agreement for commissions except by the contract of October 3, 1906, and gives as his only plausible reason why if he claimed commissions he did not take them out of the purchase money, as provided by that contract, that he was then acting in the capacity of cashier of the bank. His evidence taken as a whole, however, rather persuades us to believe that if Harne intended to make any claim for commissions, he wished to avoid raising any question as to his right thereto until after the deed had been fully made and executed, and the title to the lots made secure in Mollohan, leaving Pike, until he had accomplished this result, in ignorance of his claim and acting under the impression at least that his sale to Mollohan was for the benefit of a syndicate, in which he and Mollohan were both interested. His transactions with Booker and Foutz beforehand in securing the assignments of said contract, and with Mollohan afterwards, convince us that Harne's object was not to obtain the right to earn commissions, but to get rid of the brokers, and to acquire the right to purchase the lots under the contract, and that he had Mollohan, the president of his bank, distinctly in mind as the head of company or syndicate to purchase the property. He was not a real estate agent or broker, but cashier of a bank. That such was his purpose, is manifested not only by what he admits he told Pike and others before obtaining the option contract, but by his transactions with Mollohan before and after that contract was made. We refer particularly to the fact, not noted or referred to by counsel on either side, that on October 20, 1909, two days before the option contract, of October 23, 1909, Harne by an endorsement in writing thereon, for a valuable consideration, thereby assigned to said Mollohan, all his right, title and interest in and to the contract of March 3, 1909, whereby he acquired from said Foutz a half interest in said contract of October 3, 1906; and that subsequently on October 30, 1909, but seven days after securing said option contract, and more than two months before the final execution thereof by the making, execution and delivery of the deed from Pike and others, to Mollohan, and payment of the money by Harne to Pike, Harne by a like endorsement in writing thereon, for a

valuable consideration, thereby also assigned to said Mollohan, all his right, title and interest in and to said contract of September 13, 1909, whereby he acquired from said Foutz, all the latter's interest in said contract of October 3, 1906. These documents were all introduced in evidence by plaintiff, and there is no attempt to explain their meaning, if indeed they are susceptible of explanation other than what their language imports; so that it is thus made to appear that plaintiff, in the first instance, before procuring from Pike the option contract to Mollohan, had sold to the latter a half interest in the contract of October 3, 1906, and by his second assignment to Mollohan, made before acceptance by him of the option and deed to him by Pike, had actually sold to Mollohan his entire interest in said brokerage contract, which of course necessarily included his right, if any, to commissions earned or to be earned in sales made in compliance with terms thereof. Has not plaintiff by this evidence proven himself out of court? We do not see how we can otherwise interpret his evidence.

We certainly need cite no authority for so plain a proposition, that if a broker be employed by contract in writing, to sell land on commission, and before or after procuring from his principal the execution of an option contract to a prospective purchaser, for a valuable consideration sells and assigns to the optionee in such contract, all his right, title and interest in and to his commission contract, he can not thereafter, on consummation of such sale, recover of his principal the commissions stipulated for in such contract.

Another proposition, affirmed in *Parker* v. *The National Mutual Building Ass'n.*, 55 W. Va. 134, and approved and applied in *Noyes* v. *Caperton*, 68 W. Va. 13, which we think fatal to the claims of plaintiff, is, that an agent employed by the owner to sell real estate, on commission, at an agreed price, can not recover his commissions without proving an actual sale made at the price stipulated, unless it appears that he has been wrongfully prevented by the principal from making sale thereof, at that price; and that but for such interference the sale would have been made, or that the principal waived strict performance of the contract. In the case at bar, Pike says that in making the contract with Mollohan he was responding to a proposition made

by him, through Harne, independently of the contract of October 3, 1906, and it is manifest that he did not intend to waive strict performance of the commission contract; in effect he distinctly says so, and the conduct and previous representations by Harne, not withdrawn, that he was going to form a syndicate to take over the property, we think, justified Pike in his conclusions.

Another proposition equally well settled by authority, and having some application to the facts in this case, is that as a general rule, a man cannot become the purchaser of property for his own use and benefit, which has been entrusted to him to sell, his position as purchaser and agent for the vendor being wholly inconsistent. Story on Agency, (9th Ed.) section 31, page 34, note 2, and cases cited; *Farnsworth* v. *Hemmer,* (Mass.) 79 Am. Dec. 756, and notes; 2 Am. & Eng. Ency. Law and Pract. (1909) 1122, and cases cited in note 12. The only exception to this general rule which we have found noted in any of the decisions, is that where the broker acts openly and himself buys the property, the vendor accepting him as such, he will be entitled to commissions, upon clear proof that such was the understanding of the vendor at the time of the sale. Walker Law of Real Estate Agency, 66, citing *Grant* v. *Hardy,* 33 Wis. 668. The only authorities cited for this proposition by the Wisconsin court are its two prior decisions of *Hardy* v. *Stonebraker,* 31 Wis. 640, and *Stewart* v. *Mather,* 32 Wis. 344. The testimony of defendant in this case, however, with the attendant facts and circumstances satisfies us that he did not understand, or agree with Harne that he should be paid commissions, if a sale should be made to his proposed syndicate, or that he should have commissions on the sale to Mollohan, at a price less than that called for in the brokerage contract. He understood that the sale to Mollohan was upon a new and independent proposition, without reference to that contract, and, as we have already indicated, we think he was justified by the facts and circumstances in this conclusion.

It follows, therefore, that the court below erred in directing a verdict for plaintiff and pronouncing judgment thereon. Whether there was error in rejecting defendant's instructions, is unnecessary to decide, for as we view the case it must turn

and finally be tried on the principle covered by the one point of the syllabus, and not on the theory covered by the rejected instructions, except as to the right of the defendant to the off-set conceded and allowed by the jury in their verdict, and which may be covered by some of said instructions. The judgment will therefore be reversed and the case remanded for a new trial.

*Reversed and Remanded.*