E. E. BARTON *et al.* v. JOAB MULVANE.

### No. 10605.

1. REPLEVIN—*proof of demand and refusal not required in, where demand would have been unavailing.* Where the defendant in a replevin action has never conceded the right of the plaintiff to the possession of the property replevined, but, on the contrary, has denied the claim and right of the plaintiff thereto, and has otherwise shown that a demand would be unavailing, proof of demand and refusal is unnecessary.

2. ANTI-TRUST ACT OF 1889—*plea under § 5 of, not pleadable where plaintiff is, but right or matter in controversy is not, connected with unlawful combination.* Section 5, chapter 257, Laws of 1889, providing that, when actions are begun in this state, it shall be lawful in defense thereof to plead in bar or in abatement that the plaintiff, or any other person interested in the prosecution of the case, is a member or agent of an unlawful combination or trust, applies to actions which will promote the purposes of the unlawful combination or trust, or which grow out of the same, or some contract or business transaction thereof, but was not intended to deprive the plaintiff of the right to resort to the courts for the protection of property, rights and interests in no way connected with such combination or trust.

3. REPLEVIN—*on facts, successful plaintiff in, recovering property under conditional sale, entitled to usable value pending action.* Upon the facts of the case, it is *held*, that the plaintiff who recovered possession of property was also entitled to recover the usable value thereof between the commencement of the action and the time of the trial.

Error from Reno District Court. F. L. Martin, Judge. Opinion filed April 9, 1898. *Affirmed.*

*S. W. Leslie*, for plaintiffs in error.

*H. Whiteside*, for defendant in error.

JOHNSTON, J. In June, 1892, The Heine Safety Boiler Company, of St. Louis, Missouri, made a conditional sale of two large boilers to E. E. Barton, of Hutchinson, Kansas, for $6,300. Only a small part of the purchase price was paid, and for the balance

due three notes for two thousand dollars each were executed by E. E. Barton and indorsed by F. V. Barton. They were dated September 1, 1892, and were payable in six, nine, and twelve months after date, with interest from date at six per cent. per annum. Concurrent with the execution of the notes a contract was made and signed by both the Bartons, acknowledging that they were indebted on the boilers to the amount of six thousand dollars, and agreeing that the Boiler Company should retain as security for the payment of the notes the ownership and title of the boilers, and that if the debt was not paid when due the possession of the boilers might be taken by the Boiler Company. Subsequently, the Boiler Company sold the notes and its interest in the contract with the Bartons to R. R. Price. Default was made in the payment of the debt, and it appears that two years after the date of the notes there had been paid on the principal of the debt $1800, and on the interest only $152. On the day last mentioned, Price brought an action of replevin against the Bartons to recover the possession of the boilers, alleging that the possession was wrongfully withheld by them and that a demand for the same had been refused.

After the commencement of the action, Price assigned and transferred to Joab Mulvane the notes mentioned, as well as the contract securing their payment; also his interest in the boilers and his rights and interest in the pending suit. Mulvane was thereupon substituted as plaintiff, and the issues in the case were formed as between him and the Bartons. The latter answered by denying the claims and averments of Mulvane and alleging that Mulvane was not the real party in interest, and was not a *bona fide* owner and holder of the notes and contract. There was a further averment that Mulvane was a member

of a trust, existing in Hutchinson, Kansas, created by a combination of the Kansas Salt Company and the Hutchinson Salt Company; that these corporations had combined to control the quantity of salt to be produced, the proportion of the salt business which should be done by each corporation, and also the price at which it should be sold to consumers. The reply was a general denial.

At the trial plaintiff below introduced the notes and contract, together with proof that they had been transferred to him and testimony showing that the debt was unpaid, and that upon demand possession of the boilers had been refused. No testimony was offered, nor any claim made by the Bartons, that the debt had been paid, nor that they did not sign the notes and contract, as stated in the petition.

The claim that Mulvane did not purchase the notes and contract in good faith is not before us for consideration. It appears that proof was offered upon that question, but the testimony has not been preserved, and therefore the matter is not open for review.

A question has been raised by the Bartons as to the sufficiency of the demand. The court instructed the jury that the Bartons were entitled to an opportunity to either pay the notes or to surrender the property, and that therefore demand was necessary, unless it appeared that their conduct before and after the commencement of the action dispensed with the necessity of such a demand. It appears that they never conceded the right of either Price or Mulvane to the possession of the boilers, but on the contrary denied their title and claim thereto. Instead of attempting to surrender possession after suit was begun, a re-delivery bond was given so as to enable them to hold the possession as against the plaintiff below.

1. Proof of demand and refusal not required, when.

In its instruction the court refers the jury to the statement made by counsel as to what his defense was, to enable them to determine whether demand, if made, would have been of any avail; but this statement, whatever it may have been, is not incorporated in the record, and therefore we are unable to determine what claims or concessions were made at that time. The general rule is that where a demand would have been vain and unavailing if made, no proof of either demand or refusal is required. *Raper v. Harrison*, 37 Kan. 243, 15 Pac. 219; *Schmidt v. Bender*, 39 id. 437, 441, 18 Pac. 491; *Chapin v. Jenkins*, 50 id. 385, 31 Pac. 1084. There is testimony, however, strongly tending to show that the demand made of F. V. Barton was sufficient to meet the requirements of the law. Whatever his interest in the salt plant may have been, he appears to have been vested with, and exercised, such control as warranted the plaintiff in making a demand upon him; and therefore there was sufficient testimony upon which to base a finding that a demand had been made. However, the conduct of the parties was such that the matter of demand is quite immaterial. Complaint is made of the instructions of the court upon this question, but we fail to find anything substantial in the objections made.

Objection is also made to the exclusion of testimony as to an unlawful combination to control the output and price of salt. There was no averment or claim that the contract and transactions upon

2. Anti-trust act not pleadable in defense, except.

which this action is based formed any part of the illegal combination, nor that they in design or effect promoted the alleged trust. Mulvane is not even a party to the trust, as the answer states that it is formed between two corporations — the Kansas Salt Company and the Hutchinson

Salt Company. It is true that there was testimony offered to show that Mulvane is a stockholder in one of the corporations, but the amount of stock held by him is small compared to the entire capital of the company. There is no attempt to show that he managed or controlled the business of the corporation.

In 1889 the Legislature passed an act declaring unlawful, all combinations in restraint of trade and products and providing penalties therefor. It provided that persons entering into any such arrangement, contract or agreement should be guilty of a misdemeanor, punishable by fine and imprisonment. Laws 1889, ch. 257, § 3. It also provided that any person or corporation injured or damaged by such unlawful agreement or combination, could sue and recover for the full amount of the goods, wares, merchandise and articles advanced or controlled in price by the unlawful combination. There is another provision that in an action at law or suit in equity it shall be lawful in the defense thereof to plead in bar or in abatement that the plaintiff or any person interested in the prosecution of the case is a member or agent of the unlawful combination. (*Id.*, § 5.) The plaintiffs in error invoke this latter provision, and claim that the plaintiff is barred from recovering his property, however remote it may be from the alleged unlawful combination.

Although the language of section 5 of the act in question is general, it is manifest that the Legislature was aiming to prevent the enforcement of the illegal arrangements or contracts prohibited by the act. Obviously the Legislature intended that parties engaged in such an unlawful combination or trust should not use the law and its machinery to promote the unlawful combination or conspiracy, nor to enforce any agreement or contract growing out of it. It was evi-

dently not intended to deprive persons of any civil
rights, to place them outside of the protection of the
law, or to inflict penalties and punishments without a
trial conducted under the safeguards which the Con-.
stitution provides.    It will hardly be contended that
a person remotely connected with a corporation which
has entered into such unlawful combination, is de-
prived of the right to defend his home and family
when assailed, or of the right to resort to the courts
for the protection of his property and interests that
are in no way connected with the unlawful combina-
tion.    Such an interpretation of the law would give it
somewhat the character of a bill of attainder.    We
cannot assume that the Legislature was unaware
that the Federal Constitution forbids enactments of
that character, nor that it intended to take from per-
sons the protection of the courts, or the rights of a
citizen, or to outlaw them in advance of trial and con-
viction.    We think, rather, that the provision invoked
was intended to apply where · the unlawful arrange-
ment, contract, or interest was sought to be enforced
or some step taken designed to promote the operation
of the unlawful trust, combination, or conspiracy.

The jury was instructed that if the plaintiff was en-
titled to recover possession of the boilers he was also
entitled to recover such reasonable value
of their use, from the time of the demand
or commencement of the action until the
time of trial, as the evidence warranted.    The conten-
tion is that the plaintiff is not entitled to recover the
usable value, but is confined to the interest on the
debt.    He did not sue upon the debt, but for the pos-
session of the property to which he was entitled under
the law.    Since he was deprived of the property, he
was fairly entitled to the value of the possession while
it was unlawfully detained from him.    He was not

3. Successful plain-
tiff in replevin
entitled to usable
value of property.

allowed the interest on the debt and the usable value as well, as has been suggested. The value of the property together with the damages allowed for the use of the same do not equal the amount of the indebtedness for which the boilers stood as security. There was, therefore, no duplication or unauthorized award of damages.

The judgment of the District Court will be affirmed.