THE CRYSTAL ICE COMPANY *et al.* v. J. A. WYLIE *et al.*

**No. 12,281.** (68 Pac. 1086.)

SYLLABUS BY THE COURT.

1. ANTI-TRUST LAW—*Breach of Contract—Attorneys' Fees.* An ice company contracted to deliver to W. ice at a stipulated price per ton during the season of 1898. A small part of it was furnished when the company refused further to carry out the contract. *Held*, that in an action against the ice company by W. for damages caused by a breach of the contract, attorneys' fees cannot be recovered under the anti-trust law by showing that the reason the company violated its contract was that it had entered into an unlawful combination with another ice company, and contracted to deliver its entire output of ice to the latter. The reasons for the breach furnished no cause of action.

2. ——— *Intoxicating Liquors—Insufficient Defense.* In an action of the kind mentioned in the above paragraph, it is no defense to the ice company that a great part of the damages resulting to W. from a breach of the contract was caused by a loss of profits to him which he would have derived from sales of ice to persons engaged in selling intoxicating liquors contrary to law.

Error from Sedgwick district court; D. M. DALE, judge. Opinion filed May 10, 1902. *In banc.* Reversed.

## STATEMENT.

THIS was an action to recover damages for breach of contract, brought by J. A. and D. W. Wylie against the Crystal Ice Company, a corporation, and E. R. Powell, its manager.   The first count of the amended petition filed in the court below, upon which a recovery was had, alleged the following facts, in substance : In April, 1898, an oral contract was made by the Crystal Ice Company, through Powell, its manager, in which the company agreed with the plaintiffs to furnish ice to them from day to day during the year 1898 at the price of three dollars per ton during the spring and fore part of the summer, and not over five dollars per ton at any time during the season ; that the price was to remain at three dollars per ton until the hot weather came on ; that the average daily amount required by the plaintiffs would be six tons per day during the entire season ; that defendants supplied plaintiffs with the ice needed in the prosecution of their business as ice dealers for the month of April ; that, in pursuance of the contract, plaintiffs prepared themselves properly to carry on the business of delivering ice to their customers, and in doing so incurred expense in the purchase of a wagon and covers therefor, bought one set of double harness, and caused tickets to be printed for delivery to customers ; that on May 1 the defendants, without notice, refused to perform their contract and notified plaintiffs that they would thereafter refuse to furnish ice as they had agreed, and informed them that they had contracted their entire output of ice to be sold and delivered in the city of Wichita to another company, and had placed it out of their power further to deliver ice to the plaintiffs.

The petition contains the following allegation:

"That the profits accruing to plaintiffs on the sale and delivery of ice contracted from the defendants as aforesaid was from one to five dollars per ton, and that they lost said profits by the failure and refusal of the defendants to deliver ice according to the terms of the contract hereinbefore stated. That the defendants entered into said agreement hereinbefore mentioned with the Arctic Ice Company for the purpose of enhancing the price of ice to the retail dealers and consumers of ice in the city of Wichita, Kan., and to restrict the sale of the ice manufactured by the defendants to the said Arctic Ice Company.

"That by reason of the failure and refusal of the defendants to keep and perform their contract with the plaintiffs as aforesaid, the plaintiffs were thrown out of employment, and lost the profits upon the ice contracted for from defendants, and by reason thereof have been damaged in the sum of $2000.

"That also, by reason of the failure of defendants to fulfil their contract and combining with the Arctic Ice Company to form an ice trust, the plaintiffs have been put to the expense and trouble of employing attorneys, with whom to advise and to prosecute this action, and that the reasonable value of such attorneys' fees is the sum of $200.

"*Wherefore*, plaintiffs pray judgment against the defendants for the sum of $2000 damages and $200 as attorneys' fees."

It appeared in the testimony that the plaintiffs had for their customers in the city of Wichita persons engaged in the illegal sale of intoxicating liquors who were conducting places known as "joints," and that a part of the ice sold was used by the keepers of such places for the purpose of cooling drinks, and preserving beer and wine and liquors generally. It was found by the jury that plaintiffs expected to furnish ice to the "joints" after the 1st day of May, 1898, out of the ice which they contracted to get from the

Crystal Ice Company, and that about one-quarter of the amount which plaintiffs sold each day would have been supplied to such "joints."

There was a verdict with judgment for plaintiffs below in the sum of $698.80 and a further amount of $200 as attorneys' fees.

*Holmes & Norcross,* for plaintiffs in error.
*Sankey & Campbell,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. :   The plaintiffs below sought to enhance their damages by alleging and offering testimony to show that the cause of the breach of contract on the part of the ice company was that the latter had agreed to deliver all the ice manufactured by it to another company in violation of the anti-trust laws.   The motive which actuated the defendants below in violating their contract with the Wylies was an immaterial consideration.   The ice company, having refused to deliver ice as it agreed, was guilty of a violation of its contract and liable for such damages to the plaintiffs below as they suffered by the breach.   The intent with which the contract was violated did not furnish a cause of action, but the fact of the breach, disassociated from the reasons for it.   The wilfulness of a party in refusing to carry out a contract does not in any way change the rule of damages.   It is the same whether the breach results from mistake, accident, or inability to perform it, or whether it be wilful and malicious.   ( 3 Par. Cont. 166 ; *Stranahan Co. v. Coit,* 55 Ohio St. 398–407, 45 N. E. 634.)

The failure of the defendants below to furnish ice as they agreed gave a cause of action to the obligees in the contract.   The breach was then complete.   That

there was a trust or combination formed by the defendants below and another ice company was a matter collateral to and apart from the affirmative acts of defendants below in violating the contract. While the formation of such combination might have furnished a reason for the breach, such cause could not be inquired into in an action for damages resulting from it. The cause or motive was not the foundation of the right of action. (*National Distilling Co. v. Cream City Importing Co.*, 86 Wis. 352, 56 N. W. 864.)

It follows from this that no recovery could be had for attorneys' fees, and that evidence concerning the motives which induced the defendants below to violate their agreement to deliver ice was improperly received. The inquiry should have been confined solely to the amount of damages suffered by the plaintiffs below by a failure to receive the quantities of ice which the company agreed to furnish during the season.

The trial court gave the following instruction to the jury :

"You are instructed that, if you find from the evidence that the plaintiffs sold ice to joint-keepers to be used in connection with the business of selling beer, whisky, or wines, or any other intoxicating liquors, and that they, or either of them, expected after May 1, 1898, to sell ice to joint-keepers to be used in connection with their business as aforesaid, with the knowledge of the use of such ice in said business, and the same was to be out of ice which they allege the Crystal Ice Company agreed to furnish them, then said business of furnishing such ice to such joint-keepers was tainted with illegality, and they cannot recover in this action for any such ice they intended or expected to sell or would have sold to said joint-keepers."

We do not think it concerned the defendants below what disposition the plaintiffs would have made of the

ice. The contract to furnish and receive it, made between the parties to this action, was in no manner tainted with illegality. The commodity contracted about was a legitimate article of commerce.

"One party to the action, when called upon to answer for the consequences of his own wrongful act done to the other, cannot allege or reply the separate or distinct wrongful act of the other, done not to himself nor to his injury, and not necessarily connected with, or leading to, or causing or producing the wrongful act complained of." (*Sutton v. The Town of Wauwatosa*, 29 Wis. 21, 26, 9 Am. Rep. 534.)

The defendants below cannot excuse themselves and obtain immunity from their own wrongful acts by showing that the plaintiffs might have been guilty of some other and independent wrong or violation of law had the ice been delivered to them. The agreement between the parties to this action contained nothing to the effect that the ice contracted to be delivered was to be used for illegal purposes. To support their action for damages the plaintiffs below alleged the breach of a contract, lawful in all respects. (*Waters v. Railroad*, 110 N. C. 338, 14 S. E. 802, 16 L. R. A. 834; *Gray v. W. U. Telegraph Co.*, 87 Ga. 350, 13 S. E. 562, 14 L. R. A. 95; *Hardy v. Stonebraker*, 31 Wis. 640.)

Assume that plaintiffs below at the time the contract was made had paid the ice company in advance for all the ice they needed during the summer. Upon failure of the company to deliver the ice, could it, when sued for a return of the money paid, defend on the ground that the Wylies intended to sell the ice for unlawful purposes? Certainly not. In this case the contemplated illegal acts of the plaintiffs below had no relation to the obligation of the ice company to perform its contract. (*Wood v. Erie Rail-*

*way Company*, 72 N. Y. 196–200, 20 Am. Rep. 125.)
In the case cited it was said:

"A wrong-doer is not protected in the invasion of
the rights of another, because such a party happens
to be transacting business in violation of a special
statute."

The court further instructed the jury that the plain-
tiffs below might recover damages sustained by them
in purchasing materials to be used in carrying on the
ice business, said damages being limited to the dif-
ference in value of the property bought after the con-
tract to furnish ice was entered into and the value of
the same at the time the contract was violated.   We
think that if the plaintiffs below recover the profits
lost they are fully compensated.   If the contract had
been carried out the gain would have been the profits
of the business for the season.   In that case the ma-
terial, wagons, etc., would have been on hand.   The
procuring of wagons, harness, etc., to handle the ice
should be treated as an investment made in the busi-
ness out of which the profits were to come.   (*Fon-
taine v. Baxley*, 90 Ga. 416, 17 S. E. 1015.)

The judgment of the court below will be reversed,
and the cause remanded for a new trial.

All the Justices concurring.