No. 29,754.

In re Estate of JOHN C. HOLMES, Deceased; AL GARD and G. O. ELLIOTT, *Appellants*, v. The Estate of J. C. HOLMES, Deceased, and SUSIE M. HOLMES, as Executrix, etc., *Appellees*.

(295 Pac. 716.)

Opinion filed February 7, 1931.

*John W. Adams*, of Wichita, for the appellants.

*Dempster O. Potts* and *Dallas M. Potts*, both of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action originated in a demand against the estate of J. C. Holmes, deceased, late of Sedgwick county.

The demand was based upon three promissory notes for $300 each, dated February 11, 1922, with due dates of one and two years thereafter and bearing interest at 8 per cent. These notes were signed by J. C. Holmes, E. B. Holmes and Mrs. J. C. Holmes.

The probate court allowed the demand, and on appeal the action was tried on the files transmitted from the probate court and on an agreed statement of facts, the significance of which, defendants contend, ought to defeat the demand.

The stipulated facts, in brief, were these:

On July 9, 1921, the appellants, Al Gard and C. O. Elliott, were engaged in the undertaking business in Anthony. One L. N. Schultz was likewise engaged in the same business in the same town as their competitor. E. B. Holmes was engaged in the same line of business in Wichita. Elliott and Holmes hit upon a plan whereby the competition of Schultz would be eliminated. Holmes was to hire Schultz to work for him in Wichita for one year at a salary of $200 per month, and Elliott was to pay half of Schultz' salary. It was also a part of the arrangement that in hiring Schultz, Holmes was to obligate Schultz not to engage in the undertaking business in Anthony during the term of his employment by Holmes. The stipulation and agreement contained matter needless to reproduce, but throughout its terms runs a cautionary note which is susceptible of no other interpretation than that the parties had a misgiving that their compact was illegal. They stipulated as to their respective rights if "circumstances or conditions" should arise over which the parties "even with the utmost diligence can have no control." The agreement was entered into and signed by Elliott and Holmes, and Elliott gave checks to Holmes for sums aggregating $2,400, and Holmes in turn gave the three notes sued on payable to Gard and Elliott. J. C. Holmes, whose estate is now called on to pay these notes, joined as maker. Schultz himself had no part in these negotiations and was wholly unaware of them. He learned the facts about two months before the expiration of the contract term. It does not appear whether the purpose of the Elliott-Holmes agreement was successful in removing the competition of Schultz in the undertaking business of Gard & Elliott in Anthony.

The trial court held the contract was violative of the antimonopoly statutes and that the notes given pursuant thereto were noncollectible. Judgment was entered accordingly, and the claimants, Gard & Elliott, as holders of the notes, appeal.

Our earliest antimonopoly statute, which is still in force, was enacted in 1889. (Ch. 257; R. S. 50-112 *et seq.*) In part it reads:

"That all arrangements, contracts, agreements, trusts, or combinations between persons . . . made with a view or which tend to prevent full and free competition in the . . . transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material . . . and all arrangements, contracts, agreements, trusts or combinations between persons . . . designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles; . . . or any

other services, are hereby declared to be against public policy, unlawful and void." (R. S. 50-112.)

"That when an action at law or suit in equity shall be commenced in any court of this state, it shall be lawful in the defense thereof to plead in bar or in abatement . . . that the cause of action grows out of such combination or out of some business or transaction thereof." (R. S. 50-116.)

The later Farrelly act of 1897 (R. S. 50-101 *et seq.*) has features in common with those of the act just cited. (*State v. Lumber Co.*, 83 Kan. 399, 111 Pac. 484.) It is more comprehensive, and also denounces other combinations in restraint of trade than those specified in the act of 1889. It, too, provides that it is a good defense to plead and prove that the cause of action grows out of a business transaction made in violation of the act.

It seems quite obvious that the secret arrangement entered into between Elliott and Holmes for getting rid of Schultz' competition was both designed to and tended to advance and control the price and the cost of undertakers' supplies and services within the trade territory tributary to Anthony. The notes sued on were given in furtherance of the design and tendency denounced in the statute. How, then, can a court of law be expected to enforce their collection? This court has hitherto refused to countenance a cause of action growing out of arrangements or agreements in violation of the antitrust statutes of this state or of the federal government. (*Patterson v. Glass Co.*, 91 Kan. 201, 137 Pac. 955.) This subject was exhaustively treated in *State v. Wilson*, 73 Kan. 343, 84 Pac. 737, where, among other matters, it was held that a note and mortgage given for a consideration, a part of which was based upon an agreement made in restraint of trade, were wholly void. In *Patterson v. Glass Co.*, supra, where the cause of action grew out of transactions involving a breach of the federal and state antitrust acts, it was held:

"Whenever at any stage of the proceedings it is established to the satisfaction of the court that the cause of action upon which the plaintiff seeks to recover arose out of an unlawful conspiracy, it becomes at once the duty of the court to refuse to aid either party to profit by the iniquitous agreement." (Syl. ¶ 2.)

See, also, *Mills v. Ordnance Co.*, 113 Kan. 479, 215 Pac. 314.

The law books are freighted with cases dealing with arrangements and agreements not dissimilar in purpose to the one at bar, and such shifts and devices set on foot by men seeking their own advantage

by impairing legitimate trade rivalry and with intent thereby to plunder the public have usually fallen under the denunciation of the highest courts. (See Monopolies and Combinations in 19 R. C. L., § 20 and citations; 41 C. J. 146-153 and citations.)

The case at bar is not controlled by such decisions as *Fox v. Barbee,* 94 Kan. 212, 146 Pac. 364, where a contract was fairly made whereby one house mover bought out the business of two other men and obligated them to stay out of that business in the same community for ten years. If these plaintiffs had made a fair and open bargain to buy out Schultz' business and had bound him to stay out of the undertaking business in Anthony and thereabout for one year or ten, we would have little hesitation in upholding the contract. In the present instance the notes in question were given as part of a secret arrangement unknown to Schultz, between plaintiffs in Anthony and the makers of the notes in Wichita, who could have no lawful concern in the removal of Schultz as a competitor in Anthony. The case of *Wood v. Whitehead Brothers Co.,* 165 N. Y. 545, cited by appellants, is indeed somewhat analogous. In that case plaintiff and defendants had been competitors in the business of dealing in molding sand obtained from sand banks in Albany county. Defendants made an agreement with plaintiff for a consideration whereby he was to retire from the competitive sand business and they were to pay him a stipend of $30 per month. Later this monthly payment was reduced to $15 per month by an agreement which also provided that plaintiff should render whatever services in the sand-selling business defendants might require of him. The first and second agreements were successively carried out for two or three years, but eventually default was made in the payment of the monthly stipend. One of the defenses to the action to recover the sum due on the contract was that the agreement to pay had been made as part of the contract in restraint of trade and therefore unlawful. The lower and intermediate courts gave judgment for plaintiff, and that judgment was affirmed by the court of appeals. In the opinion it was virtually conceded that such an agreement might have been illegal at common law, that the common-law rule—

"Had its origin at a time when the field of human enterprise was limited, and when each man's industrial activity was, more or less, necessary to the material well-being and welfare of his community and of the state. . . . The conditions which made so rigid a doctrine reasonable no longer exist. In the present practically unlimited field of human enterprise there is no good

reason for restricting the freedom to contract, or for fearing injury to the public from contracts which prevent a person from carrying on a particular business. Interference would only be justifiable when it was demonstrable that, in some way, the public interests were endangered. But contracts between parties which have for their object the removal of a rival and competitor in a business are not to be regarded as contracts in restraint of trade. They do not close the field of competition except to the particular party to be affected. To say, at the present day, that such a contract as was made in this case was affected by a public interest and was a matter of public concern would be, in my opinion, unreasonable." (p. 551.)

Nowhere in the opinion was it intimated that any statute dealing with combinations in restraint of trade—if New York then had such a statute—had any bearing on the case under review. Our case is different in the important particular that we have statutes which emphatically forbid the very practices in the prosecution of which the notes sued on were executed.

We conclude that the judgment of the district court that the contract giving inception and substance to the notes sued on was made in violation of the antitrust statutes of 1889 and 1897, and therefore nonenforceable, was correct, and its judgment must stand.

The judgment is affirmed.