No. 32,644

H. V. Joslin, *Appellee,* v. The Steffen Ice & Ice Cream Company, *Appellant.*

(54 P. 2d 941)

Opinion filed March 7, 1936.

*Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellant.

*Joe T. Rogers* and *James A. Conly,* both of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for breach of an alleged oral contract to supply plaintiff with ice at wholesale prices to be retailed at specified retail prices during the season of 1934. Plaintiff prevailed, and defendant appeals.

The controlling facts as pleaded and developed by plaintiff's evidence were to this effect. In 1934 plaintiff operated a small grocery in a Wichita suburb. He conceived the idea that he could retail ice profitably in connection with his grocery. To that end he made an oral contract with defendant through its principal managing officer, C. M. Beachy, to supply him with ice at thirty cents per hundredweight, and which he agreed to sell to his retail trade at not less than forty cents per hundredweight. On the faith of that agreement he constructed a dock by the side of his grocery at an expense of $100. About April 10, 1934, defendant commenced to deliver ice to plaintiff at thirty cents per hundredweight to supply his retail trade, but on May 12, 1934, it ceased to do so. Plaintiff pleaded various items of damage and prayed judgment for $1,703. In respect to the specific terms of the contract plaintiff testified:

"I met Mr. Beachy in his office, . . . the conversation was with refer-

ence to the sale of ice. . . . I told him I . . . had contemplated going into the . . . retail ice business. . . . I said to Mr. Beachy, 'I don't want to build the ice dock and go to this expense unless I am absolutely assured I can secure ice for the entire summer.' Mr. Beachy advised me that he would furnish me all the ice that I could sell in the year 1934 if I would go ahead and build this ice dock at my expense. Mr. Beachy asked me to buy exclusively from the ice dock there behind his office or at the Polar Ice station and advised me for the present to buy ice at his ice dock on East Central and later to buy ice at the Polar Ice station on Thirteenth street. I told Mr. Beachy I would buy ice from his plant at Steffen's or at the Polar station. *Mr. Beachy said the price would be thirty cents a hundred and I was to retail the ice at not less than forty cents a hundred.* . . . The approximate expense up to the time I began to handle ice was $100. I talked to Mr. Beachy and told him I had completed the dock and that I was ready to get ice. He said, 'Go over to the dock and get the ice,' and I went over and got 600 pounds that morning. . . . I got my first ice at Steffen's about the 10th of April. I started buying ice there daily and at times it was required to keep my stock of ice around 600 pounds at the store and we continued to buy ice down there every day until the 12th of May. On the morning of May 12th I bought 1,200 pounds of ice before ten o'clock. . . . The attendant at the dock told me that Mr. Beachy wanted to see me in his office, and I went up to the office to see him. Mr. Beachy told me that I could not secure ice at his dock any more. He said that I could have that load, 600 pounds, but no more that day or after. He told me he had had complaints from the other companies of selling ice to a new dock. He said that they had had an agreement amongst the dealers not to furnish any ice to new docks. . . .

"Q. You were not able to get ice at the City Ice Company? A. No, sir.

"Q. Did you try at other places? A. Every ice dealer in town.

. . . . . . . . . . . . .

"Q. Were you able to get it at any other place in the city? A. I was unable, sir."

Plaintiff also testified that during the brief period in which defendant supplied him with ice his retail sales grew from 600 pounds to 2,500 pounds per day, and—

"The ice retailed at forty cents per hundred from the dock, and I paid thirty cents per hundred at the Steffen's Ice Cream Company's dock."

Defendant demurred to plaintiff's evidence on various grounds, one of which was that plaintiff's evidence disclosed that the contract sued on was contrary to law.

This demurrer was overruled, and defendant adduced evidence, the substance of which will not affect the result this court will be compelled to reach so it need not be summarized here.

Plaintiff's testimony tended to prove that defendant breached its alleged contract with him to make its business operations conform to an agreement it had made in restraint of trade with other whole-

salers of ice. (*State v. Smiley,* 65 Kan. 240, 69 Pac. 199.) But that feature, of the evidence, however, is not of controlling significance here. (*Ice Co. v. Wylie,* 65 Kan. 104, 107, 108, 68 Pac. 1086.) The matter of primary concern in this lawsuit is the nature of the contract between plaintiff and defendant, whose breach is the basis of plaintiff's action, and whose validity must be scrutinized under the provisions of our statutes in restraint of trade, the most pertinent paragraph of which reads:

"That all arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material . . . and *all* arrangements, contracts, *agreements,* trusts or combinations *between persons* or corporations, *designed or which tend to* advance, reduce or *control the price or the cost* to the producer or *to the consumer* of any such products or articles, . . . *are hereby declared to be against public policy, unlawful and .void."* (R. S. 50-112.) (Italics ours.)

While defendant denied the making of the oral contract .alleged, the jury chose to give credence to the testimony of plaintiff touching the making of such contract and its terms. Plaintiff was to buy all the ice he would require from defendant at thirty cents per hundredweight, and he agreed to retail the ice at not less than forty cents per hundredweight. Such price-fixing agreement in restraint of trade was the familiar and typical one which usually results in the buying public, the consumer, having to foot the bill. A manufacturer of ice may fix the price at which he will sell his product, but the law will not permit him and his buyer to agree as to the price the latter will charge when he in turn sells that product to third parties. Indeed, such an agreement would be illegal without a statute to denounce it. (Restatement, Contracts, § 515, and illustration 11, p. 992.)

Plaintiff testified that during the interval when defendant supplied ice to him at the agreed price of thirty cents he faithfully kept his end of the agreement by retailing the ice to his customers at forty cents. Clearly this contract was made and carried into effect for about a month in plain violation of the statute quoted above, and likewise in breach of other pertinent provisions of statute dealing with ·combinations in restraint of trade. (R. S. 50-101 *et seq.; State v. Smiley,* supra; *State v. Wilson,* 73 Kan. 334, 80 Pac. 639; Id., 73 Kan. 343, 84 Pac. 737; *Patterson v. Glass Co.,* 91 Kan. 201,

137 Pac. 955.) In *Mills v. Ordnance Co.*, 113 Kan. 479, 215 Pac. 314, the action was for damages for breach of a contract pertaining to the purchase and sale of farm tractors. Among the contract terms was one to the effect that in the sale of tractors to the retail trade the plaintiff would maintain the list prices prescribed by the defendant. The trial court held the contract unenforceable, and, in affirming the judgment, this court said:

"The contract reveals that the parties to it studiously sought to avoid making a contract of agency. They made a contract for the purchase and sale of tractors. They tried to have the contract apply to a restricted territory, and apparently attempted to give to the plaintiff the exclusive right to sell tractors in that territory. In doing so, the parties fixed the price at which the tractors should be sold by the plaintiff after they had been purchased from the defendant. They could not legally make such a contract because it violated the law of this state. Such a contract is unenforceable, and damages for its violation cannot be recovered. (*Patterson v. Glass Co.*, 91 Kan. 201, 137 Pac. 955; 13 C. J. 492-497.)" (p. 481.)

The syllabus, in part, reads:

"A contract for the purchase of tractors providing that the purchaser shall maintain the seller's published list prices violates the antimonopoly statutes of this state, is unenforceable, and damages cannot be recovered for its violation." (¶ 1.)

In *Patterson v. Glass Co.*, supra, it was said:

"It was the intention of the antitrust act of 1889 (Laws 1889, ch. 257, and the acts amendatory thereto) that the courts should not be used to enforce any agreement or contract entered into in violation of that law. In *Barton v. Mulvane*, 59 Kan. 313, 317, 52 Pac. 883, it was said: 'Obviously the legislature intended that parties engaged in such an unlawful combination or trust should not use the law and its machinery to promote the unlawful combination or conspiracy, nor to enforce any agreement or contract growing out of it.'" (p. 207.)

Counsel for the appellee cite various decisions of this and other courts which touch upon the subject of monopoly, but none of them is authority for the proposition that such a contract as that pleaded and proved by plaintiff is valid or that damages would be awarded for its breach. Indeed the statute (R. S. 50-107) expressly forbids such a recovery. (See, also, 13 C. J. 492-497.)

The other matters urged in the briefs are of no present concern. The judgment is reversed, and the cause remanded with instructions to enter judgment for defendant.