No. 33,384

Robert T. Morrison, Boone Gregg and J. B. Mitchell, Copartners, doing business as Morrison-Gregg-Mitchell Grain Company, *Appellants*, v. C. H. Bandt and Wilma Bandt, His Wife; The First National Bank of Phillipsburg, *Appellees*.

(67 P. 2d 584)

Opinion filed May 8, 1937.

*A. W. Relihan* and *T. D. Relihan,* both of Smith Center, for the appellants.

*W. A. Barron,* of Phillipsburg, and *W. S. Rice,* of Smith Center, for the appellees.

The opinion of the court was delivered by

Thiele, J.: The issue in this appeal is whether appellant's cause of action grew out of an illegal agreement in restraint of trade so as to render the note and mortgage sued on void or whether the note and mortgage were separable and distinct contracts and not tainted with illegality. The question arises from rulings on demurrers of the plaintiffs to answers of the defendants.

Plaintiffs brought an action to recover on a note for $5,000, dated June 26, 1931, made by the defendants Bandt, secured by a mortgage

on real estate in Phillipsburg, Kan., and to foreclose all of the defendants.

The defendants Bandt filed an amended answer alleging that on or about June 15, 1931, the defendant C. H. Bandt was operating a grain-buying-and-selling business in an elevator on the mortgaged real estate, which real estate was at that time mortgaged for $5,000 to one Close as trustee for the defendant bank; that Bandt had other real estate mortgaged for $2,000 to defendant bank, and that he was indebted to that bank on an overdraft of $3,236.18. That about June 15, 1931, plaintiffs sought to procure the elevator for their use and proposed to Bandt that they were on intimate terms with the managers of the Farmers Union & Jobbing Association, operating the only other elevator in Phillipsburg, and would make an arrangement with them so that they would both pay only the same price for grain purchased and would not compete with each other in price, and they would set the price so both of them could make good money, and in order to secure the Bandt elevator and have a place to operate in Phillipsburg, they would let defendant Bandt have $5,000 to secure good title and peaceable possession of the elevator by liquidating some of the claims and demands against him and his elevator, the advance to be evidenced by note and mortgage on the property; that plaintiffs and Bandt would operate the property and Bandt would receive two thirds of the net profits, which division of profits and other agreements should be witnessed by a later contract, and for that purpose plaintiffs' representative would interview the Farmers Union people to see if they would line up on prices to be paid, to all of which proposals Bandt orally agreed. It was further alleged that on June 24, 1931, plaintiff's representative came to Phillipsburg and stated to defendants Bandt that he had interviewed the Farmers Union people, who were agreeable, and plaintiffs were ready to close, and thereupon gave Bandt $5,000 to be used to liquidate claims and demands against the elevator property so that control and possession of the elevator could be had for the purposes mentioned, and defendants Bandt gave the note and mortgage sued on; that control and peaceable possession of the elevator property could not be secured for less than $5,000, and that it was the intention of plaintiffs and defendant Bandt that the money should be used to make them secure in their possession and control of the property, and the money was used to pay off the then existing mortgage of $5,000 for the benefit of the defendant bank, and upon

payment of said mortgage such control and possession was secured; that all of the above contracts and arrangements between plaintiffs, defendants Bandt and the Farmers Union people were secret and oral, except the note and mortgage and a contract between plaintiffs and defendants Bandt as to operation, and went into effect immediately, and thereafter plaintiffs and the Farmers Union bought grain, each paying the same prices, although each held themselves out to the public and solicited business as competing purchasers of grain; that the above arrangements continued in force until control of the Farmers Union Elevator changed in the latter part of 1932. There is specific allegation there were but the two elevators in Phillipsburg, and that the plan and arrangement made was for the purpose of creating a monopoly, etc., and was an unlawful arrangement and combination; that the note and mortgage involved grew out of and were part thereof, were without lawful consideration, as they were an essential part of the unlawful combination, were against public policy and void, etc., and should be canceled and held for naught.

The written contract between Bandt and plaintiffs need not be noticed further than to state it provides Bandt agrees to furnish the elevator and equipment and give his time to buying of grain, etc., doing so according to the wishes of plaintiffs, paying such prices, etc., according as plaintiffs desire, and providing for division of profits.

The defendant bank filed an amended answer and cross petition in which it was denied that plaintiff's mortgage was a first lien on the described real estate; and alleged that on June 30, 1931, defendants Bandt executed to defendant bank their note for $3,240, secured by a mortgage on the same real estate, and that if the note and mortgage alleged in plaintiff's petition were entered into it was pursuant to plans and agreements and subject to the following conditions: Prior to the execution of said note and mortgage, defendant Bandt was indebted to defendant bank on a note for $5,000, payable to Close for the benefit of the bank, and on a note for $2,000 secured by mortgage on other property and in the amount of $3,236.18, an overdraft, and that before execution of the note and mortgage set up in the petition, the bank had made demand on Bandt for payment of $5,000 on his indebtedness, and collection thereof was about to be enforced, and it was orally agreed between the bank and Bandt that if the other indebtedness of Bandt could be reduced $5,000, the bank would permit Bandt to continue opera-

tion of the elevator without molestation. Then follow allegations with respect to the transactions between plaintiffs and Bandt, set out more fully in Bandt's answer and not here repeated; and that the defendant bank first learned thereof about the time the instant action was filed. The cross petition was for foreclosure of the $3,240 note and mortgage as a first lien.

Plaintiffs demurred to each of the above answers and appeal from the order of the trial court overruling the demurrers. It may here be noted that appellant does not contend the answers do not sufficiently allege the making of an agreement in violation of our statutes with reference to monopolies and unfair trade, but that the arrangements pleaded do not show a single indivisible contract, but one which is separable and divisible, that the consideration for the note and mortgage was distinct from the remaining parts of the agreement; that plaintiffs do not have to rely upon those portions of the arrangements respecting restraint of trade in order to sustain the note and mortgage, and therefore the answers do not state a defense.

This court on many occasions has considered whether a particular agreement, charged to be in violation of the animonopoly statutes or otherwise in violation of law, was divisible so that a part thereof was enforceable.

In the early case of *McBratney v. Chandler*, 22 Kan. 692, recovery of attorney fees was sought. The defense was that the services were those of a lobbyist, were contrary to public policy, and recovery should not be allowed. In discussing the trial court's ruling on a demurrer to evidence, this court, speaking through Brewer, J., said:

"The contract of a lobbyist, in the sense in which that term is now used, for his services as such, is against public policy, and void. Where there is a single contract, and the services contracted for and rendered are partially those of an attorney and partially those of a lobbyist, and blended together as part and parcel of a single employment, the entire contract is vitiated. 'That which is bad destroys that which is good, and they perish together.' There is no presumption that a contract is illegal. He who denies his liability under a contract which he admits having made, must make the fact of its illegality apparent. The burden of showing it wrong is on him who seeks to deny his obligation thereon. The presumption is in favor of innocence, and the taint of wrong is matter of defense." (p. 695.)

In *Gerlach v. Skinner*, 34 Kan. 86, 8 Pac. 257, the controversy arose thus: Gerlach agreed to sell Skinner a lot and house in which

there was a saloon, and that Skinner was to get not only the real estate but the bar fixtures and stock of liquor, all for the sum of $4,000, there being no separate price on the building or stock. Skinner claimed the deed to him did not convey all of the real estate and brought his action to have it reformed. Gerlach demurred to his evidence which showed the above facts, and from a later adverse judgment appealed. This court held the demurrer should have been sustained, holding:

"Where a part only of the consideration of an entire contract is illegal and the contract is not in its nature divisible or separable, the contract is tainted, and will be treated as wholly void." (Syl. ¶ 1.)

In *Doyle v. Franks*, 71 Kan. 640, 81 Pac. 211, Doyle owned a building occupied by Franks and used as a place to sell intoxicating liquor. The building was damaged in the 1903 flood, and under a contract with Doyle, Franks repaired the building, and thereafter continued to occupy it. Franks brought suit to foreclose his mechanic's lien and Doyle defended on the sole ground the contract for restoration of the building was illegal. This court held the rights of Franks originated in a transaction not offensive to law, that his cause of action was not dependent on or affected by the intended use of the building, and that such use being collateral to the transaction, the consideration for the contract was independent of it. Recovery was allowed.

*State v. Wilson*, 73 Kan. 343, 84 Pac. 737, was a prosecution for obtaining money by false pretenses by selling cattle represented to be free of encumbrance. The defense was the claimed mortgage was void, and therefore no mortgage at all, because included in it were certain commissions charged in violation of our antitrust laws. In the opinion the question of divisibility is discussed at length, the court saying, in part:

"A part of the consideration of the mortgage was therefore illegal, if the facts were as the defendant attempted to show. Would this render the mortgage itself void? The generally accepted rule is that if any part of a single consideration or either of two separate considerations of a contract is illegal the entire contract is void, although where two promises, one of which is illegal, are made upon a lawful consideration, the promise which is unobjectionable is ordinarily held to be enforceable. (See 9 Cyc. 564–566, where the cases bearing upon the matter are collected and classified by states.) It is true that there are cases arising upon contracts based in part upon a legal, and in part upon an illegal, consideration where the courts have permitted an enforcement to the extent of the good consideration. But for the most part such cases purport to follow the general rule as above stated, but reach a result at

variance therewith by failing to distinguish between a consideration which is merely insufficient to support a promise and one which is actually against the law or contrary to good morals. Where one of two considerations, or a distinct part of one consideration, is for any reason not capable of sustaining a contract, but is not otherwise obnoxious to the law, the courts universally recognize the situation as a partial failure of consideration and permit a *pro tanto* recovery. But where one of two considerations, or a distinct part of one consideration is unlawful, as being forbidden either by the statute or by the common law, the prevailing view is that the partial illegality taints the entire transaction, and the contract itself is void. According to the great weight of authority, and as we think also according to the better reason, this doctrine is applicable where a note or series of notes is given for a consideration a specific and ascertained amount of which is illegal—for example, for an indebtedness composed of various items, some lawful and some unlawful." (p. 351.)

In *Patterson v. Glass Co.*, 91 Kan. 201, 137 Pac. 955, Patterson sued the Imperial Window Glass Company for damages for breach of contract between himself as lessor of the Osage Window Glass Company and the defendant, and attached certain property as belonging to the defendant. The Caney Window Glass Company interpleaded and claimed the attached property, and alleged that Patterson was a stockholder of the Imperial Company and that it was a corporation organized for the purpose of controlling glass prices and preventing competition, and that the contract upon which he sought recovery grew out of transactions between him and that corporation in violation of the monopoly act. At the trial the interpleader offered the record of the United States District Court of Pennsylvania showing prosecution of the Imperial Company for restraint of trade and plea of *nolo contendere*. The Osage Company was named in the indictment, but Patterson was not named. The plaintiff and the defendant demurred to interpleader's evidence. The demurrer was sustained, but the court held all parties were invoking aid of the court in furtherance of an unlawful conspiracy, and that it should not aid either of them but leave them where it found them. The plaintiff appealed to this court. The principal ground of appeal was the court's ruling denying plaintiff the aid of the court in furtherance of an unlawful transaction. We cannot take space to summarize all of the evidence. Briefly stated, the contract was that plaintiff was to manufacture glass upon defendant's orders and to sell it his entire output. He was to be paid a certain price on delivery, but there was also provision for further payment dependent on the price received by defendant from its customers. Plaintiff was to make defendant certain reports, and his plant and books were to

be open to defendant's inspection to see he did not violate the contract. This court held there was no room for plaintiffs' contention the contract upon which he sought to recover was collateral to and independent of the unlawful combination.

In *Ridgway v. Wetterhold*, 96 Kan. 736, 153 Pac. 490, plaintiff, who was owner of a patent right, sought recovery on a contract with defendant, who purchased an interest in the patent, for services performed in manufacturing the patented device. Recovery was sought on the contract and also upon *quantum meruit*. The defense was the plaintiff had not complied with the statutes requiring filing of letters patent. Recovery was allowed on the *quantum meruit* count. Defendant appealed. This court held that plaintiff's contention the written contract was divisible into two parts, one for sale and one for services, was not sound; that the contract for employment was in writing, he was obliged to rely on it and could get nowhere without it; that it was clear his agreement to perform the services and defendant's agreement to employ him constituted a part of the consideration for the sale of the patent, and recovery was denied.

In *Miller v. Railway Co.*, 97 Kan. 782, 156 Pac. 780, it was held that a contract for shipment of stock was not void *in toto* because included in its terms were certain provisions violative of the federal statutes with reference to interstate commerce. The opinion states that the particular contract had been held by federal and state courts not as an entire but as a divisible one. It was further said:

"It is against public policy to permit a common carrier to escape liability for loss and injury occasioned by its negligence, and for that reason certain provisions in the contract in question are void; but this is the extent to which the decisions and authorities have gone. It is not necessarily contrary to any public policy so far declared by the courts generally or by congress for an interstate carrier to insert in its shipping contracts provisions which for reasons of public policy the courts will not enforce." (p. 789.)

Although based on a much different state of facts than the case at bar, the question of divisibility of a contract was before the court in *Henshaw v. Smith*, 102 Kan. 599, 171 Pac. 616, where it was held:

"If a contract contains provisions some of which are valid and some of which are invalid, and the lawful matter can be readily severed from that which is unlawful, the lawful portion of the contract will be upheld. (*Fackler v. Ford, McMahon*, 21, 1 Kan. (Dass. Ed.) 463, syl. ¶ 2.)" (Syl. ¶ 1.)

In *Mills v. Ordnance Co.*, 113 Kan. 479, 215 Pac. 314, suit was brought to recover on the contract set out in that opinion, which plaintiff contended was an agency contract permitted under the

statute. Defendant contended it was a contract for purchase and sale and in violation of the antimonopoly statutes. The plaintiff contended that if the price-fixing part of the contract rendered it illegal, it was divisible, and that the parts which did not violate the law should be enforced. The court concluded:

"An examination of the contract reveals that the illegal provision affects all of it, and that no part of it can be separated from the illegal part so as to render any of it enforceable. The entire contract is unenforceable (*Ridgway v. Wetterhold*, 96 Kan. 736, 153 Pac. 490; 13 C. J. 492-497)." (p. 482.)

In *Rawleigh Co. v. Holt et al.*, 117 Kan. 712, 232 Pac. 866, plaintiff sold defendant certain merchandise for resale by him. In a suit to recover a balance due, defendant's guarantors urged that included were certain extracts which contained alcohol, and that the prices paid and the quantities purchased indicated they were bought for use as intoxicating liquors. Most of the articles ordered were not subject to objection. Distinct articles at affixed prices were ordered and subsequently sold. The trial court held that because of the inclusion of the intoxicating extracts, plaintiff could not recover for any of the merchandise. This court reversed, stating:

"It is true that where there is a single indivisible contract, as, for instance, a promissory note, and the whole or a part of the consideration is illegal, the contract is tainted so that it cannot be used as a basis of an action. (*Gerlach v. Skinner*, 34 Kan. 86, 8 Pac. 257; *The State v. Wilson*, 73 Kan. 343, 84 Pac. 737.) These cases, however, recognize that if the contract covers several parts, some of which are legal and some illegal, and the legal parts of the goods are severable, a recovery may be had to the extent of that which is legal." (p. 713.)

The above decisions do not exhaust the field. They are sufficient to show the difficulty of stating any rule of general application as to divisibility, and further to show that whether the particular contract under consideration is divisible depends almost entirely on its terms and conditions and the situation from which it arose.

Without repeating the allegations of both answers, it is sufficient to state they both allege that plaintiffs approached defendant Bandt with the purpose of entering into an unlawful combination in restraint of trade at Phillipsburg; that after arrangements had been made with the Farmers Union people, in order that the part to be performed by Bandt might be performed, it was necessary that Bandt's indebtedness to the defendant bank be reduced $5,000 to insure a place of operations, and that contemporaneous with the arrangements made with the Farmers Union people, plaintiffs ad-

vanced $5,000 to Bandt, taking the note and mortgage now in suit, and also, with Bandt, entered into the written contract for the operation of his elevator. Under the allegations, the mortgage loan would not have been made unless the other parts of the agreements had been made, and insofar as plaintiffs are concerned, inducement for making the loan was the opportunity to operate the combination in restraint of trade. Under the allegations of its answer the bank was not a party to the dealings between plaintiffs, Bandts and the Farmers Union people, and knew nothing of them, and there is no claim that the note and mortgage set up in the bank's cross petition are not entirely valid. As we view the matter, the fact plaintiffs took security from Bandt for the $5,000, and are now seeking to apply it to payment of the debt, puts them in no better situation, so far as divisibility of the contract is concerned, than had they simply loaned him that money without security and now sought to recover it. As we view it, the allegations of the answers show a situation where each thing that was done, e. g., plaintiffs' agreement with Farmers Union, plaintiffs' advancement of $5,000 to enable Bandt to make his possession of his elevator secure, plaintiffs' agreement with Bandt for operation, was part and parcel of the entire unlawful agreement, and that no one of them would have been done if the others had not been done. The contract was indivisible.

Appellants further contend that the defense set up in the answers is barred by reason of G. S. 1935, 50-107. We do not think so. It is true that statute states that in any action it shall be lawful to plead in defense that the plaintiff is at the time or has within one year next preceding the commencement of the action been guilty of a violation of the act or that the transaction grows out of a business transaction in violation of the act, but that does not mean that the first part of the section is without force. It says:

"Any contract or agreement in violation of any of the provisions of this act shall be absolutely void and not enforceable in any of the courts of this state"; etc.

If appellants' contention is correct, after one year the void and unenforceable agreement may become valid and enforceable. In the case before us the defense is based upon the fact the agreement is void and unenforceable, and not because plaintiffs were guilty of violating the act. And it may be observed that while the combination alleged was in violation of Laws of 1897, chapter 265, appearing as G. S. 1935, 50-101 to 50-111, inclusive, of which the section

relied on by plaintiffs is a part, it is also a violation of Laws of 1889, chapter 257, appearing as G. S. 1935, 50-112 to 50-120, inclusive, and under section 5 of that act is a provision relating to defenses in which no limitation of time is fixed.

We do not believe the defenses were barred by any statute of limitations.

The order of the trial court overruling the demurrers is affirmed.